**In the Matter of RIVERSIDE VILLAGE, INC., Debtor.**

**Bankruptcy No. 87–3558–8B1.**

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 21, 1988.

Ronald Bidwell, Tampa, Fla., for debtor.

Charles Mixon, Jr., Tampa, Fla., for Tenants.

Reynold Meyer, Tallahassee, Fla., Eric Miller, for Dept. of Business Regulations.

### ORDER ON DEBTOR'S MOTION TO REJECT MOBILE HOME PARK TENANT'S LEASES

THOMAS E. BAYNES, Jr.,
Bankruptcy Judge.

THIS CAUSE came on to be heard upon the Debtor/Landlord's motion to reject all leases with the numerous tenants in Debtor's mobile home park. The State of Florida, Department of Business Regulations, Division of Florida Land Sales, Condominiums and Mobile Homes has been allowed to intervene in this matter.

No party in interest challenges the Debtor/Landlord's right under the Code to re-

ject the leases with the mobile home park tenants. This mutual understanding appears to be a strange bedfellow to these parties as they have been at each other's throats (an understated characterization by all the evidence) for sometime. Physically and litigiously, the parties have been embroiled in battles concerning fair rental value, water supply, and other amenities of the mobile home park. There has been litigation between tenant association members and with the individual landlords' principal. There has been only a mild reduction of these confrontations within this Chapter 11 case.

The gravamen of the dispute between the parties is the length of time the tenants may remain in possession. Section 365(h) allows a tenant, after a landlord's rejection of the lease, to remain in possession of the leasehold for the balance of any time frame enforceable under the terms of the lease. Considering the proffered evidence with the alleged historical problems within this mobile home park, it boggles the mind why any tenant would wish to remain. Even though the tenants may claim some setoff rights against rentals under Section 365(h)(2), these potential claims have not clarified the tenants' continued demand for possession. Nonetheless, the question of these damages is not yet before this Court. *See, Upland/Euclid, Ltd. v. Grace Restaurant Co., (In re Upland/Euclid, Ltd)*, 56 B.R. 250 (Bankr. 9th Cir.1985).

■ In order to determine the remaining term under a lease rejected by a debtor/landlord under Section 365(h)(1), the Court must do the following: (1) review the lease between the parties; (2) consider all applicable state law as it affects the lease; and (3) consider any actions of the parties which may affect the leasehold term and juxtapose such action with the lease terms and applicable state law.

■ Between the Debtor/Lessor and the mobile home tenants, there is no written lease. However, Florida's unique decision in 1984 to preempt regulation of rents on mobile home lots offers a clear statement of legislative and administrative intent regarding mobile home tenancy. *See* Florida Mobile Home Act, Fla.Stat. § 723.001 et seq. (1984); Proposed Rule 7D–31.002, *Fla. Admin.Code; see also, Village Park Mobile Home Association, v. State Dep't of Business Regulation*, 506 So.2d 426 (Fla. 1st DCA 1987). The purpose of the Florida Mobile Home Act (Act) is to mandate disclosure of specific information concerning mobile home parks to the tenants residing in the park as of June 4, 1984 and to all prospective tenants who may be leasing from that mobile home park in the future. A prospectus must be drafted by every mobile home park owner and approved by the designated state agency, with copies distributed to each one of the tenants presently residing in a park and to all prospective tenants. The Act, in tandem with the prospectus, establishes the rights of the parties to the mobile home tenancy after June 4, 1984. Ultimately, all tenants in a specific mobile home park would be party to a lease with similar terms whether they were in the park before or after June 4, 1984. The rents and fees that could be charged to tenants for mobile home park upkeep and improvements are controlled by the lease and the Act.

A prospectus was submitted to the State for this Debtor and approved on September 26, 1985 with an effective date of March 1, 1986. There is some question, however, as to which tenants, whether pre–1984 or post–1984, received this prospectus. The prospectus admitted into evidence is blank in major parts. Had individually executed prospectuses been provided, part of the prospectus would establish the base date upon which a lease term could be determined in this case. However, no such prospectuses were admitted.

The Act establishes that no rental agreement between a mobile home park owner and a tenant shall be for less than one year, ergo the remaining term under Section 365(h)(1) must be one year or less. Thus, the issue is from what date does the leasehold term run. A form letter to tenants executed by the Debtor's president on August 17, 1987 states the rent in the mobile home park would increase as of December 1, 1987. The letter notes a pre-

vious rental increase had been established on November 1, 1986. Debtor/Landlord takes the position since rent increases post–1984 were established on November 1, 1986, and by the August 17, 1987 letter re-established on December 1, 1987, the lease term would have to end on December 1, 1988. This argument is contended by Debtor to be supported by the Act in that rents can only be increased once a year and December 1, 1987 began the new one year term. Further, the Act requires a 90 day notice to raise rent and that was given by the August 17, 1987 letter.

Tenants argue the date runs from June 4, 1984 and therefore the term of the leasehold would end on that anniversary in 1989. The tenants and the State of Florida argue that if rent increase dates are to be used to establish the start of the rental term, it must be historically founded within the effective date of the Act, June 4, 1984, and within the terms permitted by the statute and the prospectus.

Rent increases began on September 30, 1984 effective January, 1985. Later, in April, 1986, a rental increase was announced and was to become effective on November 1, 1985. This increase was litigated in state court and resulted in a final judgment concerning rental value. There was also the August 17, 1987 letter stating a rental increase was to be effective on December 1, 1987. As nice as these dates appear on paper, there is really no supporting evidence to establish these dates would, in fact, affect the leasehold term of any tenant presently in the park.

Clearly, the Act seeks to preempt the various types of agreements historically entered into in the chaotic relationships between mobile home park owners and tenants. While the effective date of the Act establishes numerous requirements, it does not mandate that the effective date of the statute alone change each and every contract. Further there is no evidence before this Court that the effective date of the Act in and of itself establishes the term of any mobile home park leasehold. To hold otherwise may pose severe federal and state constitutional problems regarding the impairment of contract.

The rule of law which must prevail, especially in determining the rights of various parties under the Act as it is reflected in bankruptcy law, must be one of clear legislative intent. Intent can be established by looking at the legislative policy of the Act as well as that of 11 U.S.C. § 365(h)(1). Clearly, bankruptcy courts are required to look to state law to determine the remaining term of any lease that is rejected by a landlord debtor. The prospectus is the foundation upon which the Act seeks to reconcile the confusion regarding leasehold terms between tenants and mobile home park owners. While the evidence does not establish when the prospectus of this Debtor was handed to each and every tenant, it is quite clear from the prospectus admitted into evidence that its effective date was March 1, 1986. There is no other evidence in the record to establish a date upon which the term of the leaseholds could begin or end. Therefore, this Court must conclude that considering the legislative intent on this matter plus the acts of the various tenants and the Debtor/Landlord, there is only one benchmark date upon which the term of the lease can be established. That date is the effective date of the prospectus, March 1, 1986, and therefore the remaining term of the tenants under Section 365(h)(1) of the Bankruptcy Code extends to March 1, 1989.

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the Debtor's Motion to Reject the Mobile Home Park Tenants' Leases be, and the same is hereby, granted. It is further

ORDERED, ADJUDGED AND DECREED that pursuant to 11 U.S.C. § 365(h) the tenants are hereby authorized to remain in possession of the mobile homes under the terms of the prospectus, and if amended, until March 1, 1989. Any previously authorized vacation or surrender of or eviction from the premises is hereby stayed until further order of this Court. It is further

ORDERED, ADJUDGED AND DECREED that inasmuch as no evidence was

introduced with respect to the issue of retaliatory eviction, such claims are hereby denied except as the claims may relate to claims under 11 U.S.C. § 365(h)(2). *See, Williams v. Clark (In re Clark),* 91 B.R. 324 (Bankr.E.D.Pa.1988).

DONE AND ORDERED.