In the Matter of RIVERSIDE VILLAGE, Debtor.

Bankruptcy No. 87-3558-8B1.

United States Bankruptcy Court, M.D. Florida, Tampa Division.

July 14, 1989.

Ronald Bidwell, for debtor.

Steven A. Royal, for tenants.

Reynold Meyer, for Dept. of Business Regulations, Div. of Mobile Homes.

Christopher P. Jayson, for Federation Mobile Home Owners.

ORDER DETERMINING THE EXTENT OF THE LEASEHOLD INTEREST OF MOBILE HOME PARK TENANTS

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THIS CAUSE initially came before this Court upon Debtor's/Landlord's Motion to Reject Lease under Section 365 of the Bankruptcy Code. In order to properly analyze the law and policy associated with this rejection, the Court has previously ruled on two of the three aspects associated therein. In order to assist all concerned, a reiteration of pertinent facts and findings are set out herein.

The Debtor, Riverside Village, Inc., owns a mobile home park under a ninety-nine year lease in Hillsborough County, Florida. It has fifty-one permitted lots: forty-nine for mobile homes; two for recreational vehicles; and four unoccupied cabins. At the time of the initial hearings, tenants occupied twenty-four lots with mobile homes and four with recreational vehicles. The remaining lots and cabins are vacant.

The Debtor's mobile home park has limited amenities. These facilities include a laundry room consisting of four washing machines and one dryer; an unusable recreational hall; paved streets and lighting; boat docks which are closed; a boat ramp; sewage facilities; and garbage pickup. The water supply has been a major impediment to the occupation of the park. The county health department previously notified the owner and tenants that potable water should be used. The tenants have since been buying bottled water and deducting the cost from their rental payments (when made).

Because of a five year long battle between the Debtor and the tenants, both in and out of state court, with battles including the withholding of rents, state court litigation on fair rental values, and a refusal to pay rents once required by the state court judgment, it came as some surprise that the tenants did not challenge the ability of the Debtor/landlord to reject all the leases of the mobile home park. As noted in a previous opinion,[1] this mutual understanding to allow the rejection of the leases appeared to be a strange bedfellow to these parties as they had been warring for all these years. Further, considering the evidence, the Court wondered why any tenant wished to remain. During the hearings it was argued that mobile home parks were unique to the extent that tenants did not

1. *Matter of Riverside Village, Inc.,* 94 B.R. 750 (M.D.Fla.1988).

have the ability in many ways to move their mobile homes.[2] Evidence was admitted concerning the condition of the mobile homes, the types of mobile homes, the inability to move them, the cost to remove them, and the possibility of non-acceptance of these types of mobile homes in the nearer parks. Nonetheless, it appears that since the Court's two prior rulings, certain of the homes have been moved or sold.

There is no doubt mobile home parks and the landlord and tenant relationship are controlled by Florida Statute. In 1984, the State of Florida made a unique decision to preempt the regulation of rents on mobile home lots. The legislative and administrative intent to make such controls enforceable on all mobile home park owners is clear. *See,* Florida Mobile Home Act, Fla. Stat. § 723 (1987 and Supp.1988); Proposed Rule 7D/31.002, Fla.Admin.Code; *See also, Village Park Mobile Home Ass'n Inc. v. State Dep't of Business Regulation,* 506 So.2d 426 (Fla. 1st DCA 1987); *Palm Beach Mobile Homes, Inc. v. Strong,* 300 So.2d 881 (Fla.1974); *Stewart v. Green,* 300 So.2d 889 (Fla.1974). The Florida Mobile Home Act mandates specific information concerning mobile home parks be disclosed to tenants residing in the park as of June, 1984 and to all prospective tenants thereafter. A prospectus must be drafted by every mobile home park owner and approved by the designated state agency. Copies of the prospectus must be sent to tenants residing in the park and all future tenants. It was the intent of the legislature that ultimately all mobile home park tenants, no matter when they entered a park, would be a party to a lease with similar terms incorporating the prospectus and Fla.Stat. § 723. Therefore, the lease and the Act would control the rents and fees which could be charged to tenants including mobile home park maintenance and improvements. The Debtor submitted to the State a prospectus which was approved. Tenants received the prospectus.

This Court was first called upon to determine the length of the leases between the Debtor and its various mobile home park tenants.[3] All parties admit there were no written leases. The prospectus should have set forth meaningful information to determine a possible term of the lease. The only prospectus admitted into evidence was one with blank spaces within which significant information could have been written. This Court decided from the evidence a term of the lease could be established by either review of the lease between the parties and in this case there was not one; consideration of applicable state law as it effected the lease, which the Court did; and the actions between the parties. From the evidence adduced in considering this criteria, the Court held,

> While the evidence does not establish when the prospectus of this Debtor was handed to each and every tenant, it is quite clear from the prospectus admitted into evidence that its effective date was March 1, 1986. There is no other evidence in the record to establish a date from which the term of the leaseholds could begin or end. Therefore, this Court must conclude that considering the legislative intent on this matter plus the acts of the various tenants and the Debtor/Landlord, there is only one benchmark date upon which the term of the lease can be established. That date is the effective date of the prospectus, March 1, 1986, and therefore the remaining term of the tenants under Section 365(h)(1) of the Bankruptcy Code extends to March 1, 1989.

*Riverside, supra,* at 752.

By this previous order of December 21, 1988, the Court determined that under Section 365(h)(1), the remaining term of the tenants' lease was one year which would end on March 1, 1989. The Court left open certain questions under Section 365(h)(2).

After several other hearings, this Court on May 15, 1989, determined the fair rental value and damages pursuant to Section 365(h)(2). By that order the Court established a remedy to an intermediate problem

---

**2.** *See, Pearce v. Doral Mobile Home Villas, Inc.,* 521 So.2d 282 (Fla. 2nd DCA 1988).

**3.** *Riverside Village, supra.*

facing the Debtor and the tenants. The Debtor had raised the rents on numerous occasions, a state court had made certain determinations as to fair rental value, and some of the tenants were still refusing to make rental payments. If the fair rental value was established, then the Debtor could determine its income stream from the remaining tenants until the end of the lease term. In light of the fact that tenants may also claim setoff damages under Section 365(h)(2), it was important to determine fair rental value so the tenants could set off these damages against those rents. It must be kept in mind that part of the five year dispute between the parties was directly related to the issue of fair rental value. Due to the fact the leases were oral, the prospectus had not specified the rental amounts, and all the rent increases had been either challenged, refused by the tenants or limited by the state court, it was necessary for this Court to determine the fair rent value of the lots. A copy of that May 15, 1989, Order is attached as an appendix to this order.

## THE FINAL DETERMINATION (WE HOPE)

The final issue is whether the Act extends, renews, or otherwise changes the tenancy of the mobile home tenants. If so, the tenancy would end beyond the previously determined March 1, 1989 date. In effect, the tenants joined by the State of Florida, Department of Business Regulation, Division of Florida Land Sales, Condominiums and Mobile Homes, with a concurring argument from the Amicus Curiae Federation of Mobile Home Owners of Florida, Inc., asks this Court to revisit the issue of the length of a mobile home park tenancy after rejection by a Chapter 11 debtor under Section 365(h)(2). Simply put, they argue that Fla.Stat. § 723 is the sole basis upon which tenants from a mobile home park may be evicted. Fla.Stat. 723.-061 [4]. The Florida Statute does not provide for tenant eviction upon the end of a tenancy. *See, Donovan v. Environs Palm Beach*, 309 So.2d 561 (Fla. 4th DCA 1975). In fact, the argument suggests the mobile home tenancy continues in perpetuity unless one of the statutory eviction bases is applicable.[5] Of course, if the tenants, Division, and Amicus Curiae are correct, this Court's initial decision holding that the tenancy ended on March 1, 1989 has no effect. Further, a unique situation would arise whereby a Chapter 11 debtor, by rejecting the leases in the park, would annul all duties to the tenants other than maintaining the property in accordance with the health, safety, and public welfare statutes of the State of Florida.[6] The inability to

---

**4.** The Court disagrees with the argument there is *no periodic tenancy established in the Florida Mobile Home Act.* The language of the Act and of the Recreational Vehicle Statute indicate the Florida legislature contemplated the establishment of a term under a mobile home park tenancy. The tenancy, of course, is a minimum of one year. Fla.Stat. § 723.031. Fla.Stat. § 513.014 dealing with mobile home and recreational vehicle parks provides:

> ...a mobile home park which rents spaces to recreational vehicles on the basis of long-term leases is required to comply with the laws and rules relating to mobile home parks.

However, the fact there may be a statutory term of a mobile home park tenancy does not resolve the issue of whether the legislation limits the basis for the eviction. While *Pearce, supra,* note 2, would support tenants' et al, argument, the Florida Supreme Court decisions contemplate a term over one year could be established by mobile home park rule and be a basis for tenancy termination and eviction. *Palm Beach Mobile Homes, Inc., supra,* at 888; *Stewart, supra,* at 894.

**5.** The Court inquired of the tenants, Division, and Amicus Curiae that if a tenant had filed bankruptcy, this Debtor/tenant, according to these parties' argument, could reject the lease under Section 365, yet remain in possession as long as the Debtor paid rent and did not violate the exclusive statutory bases for eviction. Fla. Stat. 723.061. The tenants, Division, and Amicus Curiae disagreed with this congruous extension of their agreement. The constitutional awkwardness of their position was duly noted by the Court.

**6.** *Saravia v. 1736 18th Street, N.W., Ltd. Partnership,* 844 F.2d 823 (Bankr.D.C.1988); *In re Cafe Partners/Washington 1983,* 90 B.R. 1 (Bankr.D. C.1988); *See also, Friarton Estates Corp. v. City of New York (In re Friarton Estates Corp.),* 65 B.R. 586 (Bankr.S.D.N.Y.1986); *Upland/Euclid, Ltd. v. Grace Restaurant Co., (In re Upland/Euclid, Ltd.),* 56 B.R. 250 (BAP 9th Cir.1985); *contra, In re Stable Mews Assoc., Inc.,* 41 B.R. 594 (Bankr.S.D.N.Y.1984); *In re Stable Mews Assoc.,* 35 B.R. 603 (Bankr.S.D.N.Y.1983).

evict at the end of a tenancy would place the Debtor in a situation where it would have unwelcome tenants paying a minimum rent. The tenants would be in a situation, whether it be paying a minimum rent or not, of receiving no services except the minimal. The reorganization under Chapter 11 would appear useless.

The parties herein have not articulated any policy concerns. The Debtor seeks only to clear its park of tenants who have withheld rent believed by Debtor to be necessary to maintain the park. The tenants, Division, and the Federation of Mobile Home Park owners seek an interpretation of the Florida Statutes that there can never be an eviction absent the existence of a specific statutory basis. There being no basis herein, the tenants seek to remain in the park notwithstanding the minimal amenities.

The parties on several occasions have raised a possible constitutional issue associated with the Act. The Act's predecessor has been found constitutional by the Florida Supreme Court. *Palm Beach Mobile Homes, supra; Stewart, supra.* Further, other similar state statutes have renewed the constitutional debate on legislatively controlled tenancies. *See, Troy Ltd. v. Renna,* 727 F.2d 287 (3rd Cir.1984); and Chief Justice Rehnquist's dissenting opinion in *Fresh Pond Shopping Center, Inc. v. Callahan,* 464 U.S. 875, 104 S.Ct. 218, 78 L.Ed.2d 215 (1983). However, this Court doubts the constitutional issue of the Florida Statute has been properly raised. Clearly an interpretation of the Act can be made consistent with the Bankruptcy Code and therefore no constitutional impediment would be placed against the Florida Statute.

The Supreme Court of Florida anticipated the deprivation of property challenge which would arise if the Statute were interpreted as creating a perpetual tenancy, and thus, limiting the lessor's right to evict. In *Palm Beach Mobile Homes, supra,* the Court stated,

Recognizing the perpetual occupancy rights on another's property cannot, consistent with the Constitution, be granted by law, we must construe the act in such a manner as to preserve its purpose while operating within the framework of the Constitution of Florida and of the Constitution of the United States. We, therefore find that is [sic] is not inconceivable that one rule adopted by a mobile home park owner be that the landlord can terminate the tenancy after substantial duration and a park rule to that effect would be consistent with the remedies sought to be accomplished by the legislature, *provided* that the notice time was for a reasonable period, and we cannot say that a rule requiring vacancy on at least twelve months or more notice would be unreasonable.

*supra,* at 888.

The Florida Supreme Court reaffirmed its position in *Stewart, supra,* at 894. If a statute's perceived constitutional defect can be remedied albeit by a mobile home park rule, surely the pre-emptive power, as well as bankruptcy policy established in the Code, can provide the same curative effect. Therefore, the ability of a Debtor-in-Possession to reject a lease under Section 365 of the Bankruptcy Code must have a similar effect on mobile home park tenancy.

This debtor-in-possession's failure to provide in its park rules and regulations a duration for any tenancy does not eliminate such a later election by way of a motion to reject the lease pursuant to Section 365. Rejection by the debtor-in-possession without a previously promulgated park regulation causes the tenancy to run from the date service of the Motion to Reject (properly served on tenants affected and subsequently approved by the bankruptcy court) to a one-year anniversary of the service of the motion to reject. This Court believes

The case at bar may be distinguished from some of these decisions since their focus is upon debtor's ability to reject tenant's lease. Nonetheless, this Court finds Section 365(h) can be read consistent with 28 U.S.C. § 959(b). Debtor/lessor must comply with the minimum habitability laws of the state. Within that dimension, the debtor's estate is free from all contractual obligations with the tenants as established by lease, prospectus or statute. Concurrently, tenants have a similar duty plus paying rents less post-rejection setoffs.

this holding is consistent with the Act, the constitutional rights of the parties, the Bankruptcy Code and all inherent policy considerations. In light of the above, this Court's previous Order of May 15, 1989, granting Debtor's Motion to Reject mobile home park tenant leases is modified to reflect the proper determination of mobile home park tenancies rejected under Section 365(h). It is, therefore,

ORDERED, ADJUDGED AND DECREED that pursuant to 11 U.S.C. § 365(h)(1), the tenants are hereby authorized to remain in possession of the mobile homes and lots under the terms of the prospectus, oral lease, and Florida Statute, as amended, until the elapse of one (1) year from the date each tenant was served with Debtor's Motion to Reject the mobile home park tenants' lease. The tenants shall continue to pay rent less the costs of potable water in accordance with this Court's Order of May 15, 1989. It is further

ORDERED, ADJUDGED AND DECREED that the Court finds no other renewal or extension of any tenants' term under Florida law, the prospectus, any actions of the parties, or Bankruptcy Code or Rules. It is further

ORDERED, ADJUDGED AND DECREED that at the end of the tenancy established above, each respective tenants shall surrender the premises to the Debtor. Upon a tenant's failure to surrender the premises upon the termination of the tenancy, the Debtor may proceed to evict said tenants in accordance with Florida law. It is further

ORDERED, ADJUDGED AND DECREED that this Court finds that by the Debtor-in-Possession rejecting the lease under Section 365(h), all the requirements under the lease, prospectus and Florida Statutes have been rejected and are no longer in effect, except that the Debtor shall have a duty to comply with the Florida Statutes, county and city ordinances, and any administrative rules and regulations as to the maintenance of the mobile home park in accordance with public health, safety and welfare standards, including, but not limited to water, sewage, and electrical utilities. It is further

ORDERED, ADJUDGED AND DECREED that except for the modification of the duration of the tenancy of the mobile home park tenants, this Court's Orders of December 21, 1988, and May 15, 1989, shall remain in effect.

DONE AND ORDERED.

## APPENDIX TO ORDER DETERMINING THE EXTENT OF THE LEASEHOLD INTEREST OF MOBILE HOME PARK TENANTS

In the United States Bankruptcy Court for the Middle District of Florida—Tampa Division

In the Matter of: Riverside Village, Inc., Debtor

Case No. 87–3558–8B1

Filed May 15, 1989.

## ORDER DETERMINING FAIR RENTAL VALUE AND DAMAGES PURSUANT TO SECTION 365(h)(2)

THIS CAUSE came on for consideration upon the Court's own motion for the purpose of entering an appropriate order in the above-captioned Chapter 11 case. The Court reviewed the record and finds on December 21, 1988 this Court entered an order granting the Debtor's Motion to Reject Mobile Home Park Tenants' Leases. The order authorized the tenants to temporarily remain in possession of the mobile homes. The order, however, did not address the claims relating to 11 U.S.C. § 362[365](h)(2). It is therefore appropriate to enter an order with respect to 11 U.S.C. § 362[365](h)(2). The Court reviewed the record, heard testimony of the Debtor's principal, it's expert, and the tenants' experts as to fair rental value of the lots and as to the tenants' damages associated with the rejection of the leases, and finds as follows:

The Debtor, Riverside Village, Inc. owns a mobile home park under a ninety-nine year lease in Hillsborough County, Florida. It has fifty-one permitted lots: forty-nine

for mobile homes; two for recreational vehicles; and four unoccupied cabins. At the time of the hearings on motions to determine fair rental value and damages under Section 365(h)(2), tenants occupied twenty-four mobile home and four of the recreational vehicle lots. The remaining lots were vacant.

The limited amenities on the Debtor's premises include 1) laundry facilities consisting of four washing machines and one dryer; 2) a closed recreational hall; 3) paved streets and lighting; 4) boat docks closed from use; 5) a boat ramp; 6) sewage facilities; and 7) garbage pickup. The water supply is the major impediment to occupation of the park.

Despite an ongoing debate over the classification of the water system at the mobile home park, the county health department had notified the owner and tenants that portable water should be used. The tenants have since been buying bottled water.[1] The tenants, for sometime, have deducted from their rent payments (when made) charges for purchasing their bottled water.

The five year long battles between the Debtor and the tenants, both in and out of court, have included withholding rents, state court litigation of fair rental values, and some refusals to pay the rents required by the state court judgment. The Debtor claims the lack of sufficient rental proceeds has impeded the Debtor's ability to improve the park. Tenants argue they are not receiving the mobile home park amenities and the rental proceeds have been squandered by the Debtor or it's principal. The tenants claim they cannot afford to relocate because of the high costs of moving and obtaining new lots.

When the Debtor purchased the mobile home park in 1984, the Debtor charged $60.00 per month for the rental of inside lots and $62.50 per month for the rental of waterfront lots. Effective January, 1985, rents were increased to $80.00 for the inside lots and $90.00 for the waterfront lots. A majority of the tenants paid the increased rents. Pursuant to a previous state court order, two groups were paying different rates at the time the rent increase went into effect. A second increase, noticed in April, 1986, to be effective in November, 1986, was in the amount of $95.00 for the inside lots and $105.00 for the waterfront lots. A third increase, to take effect on December 1, 1987, and a fourth increase, to take effect in December, 1988, raised the rent to $135.00 for the inside lots and $145.00 for the waterfront lots. In June, 1987 a final judgment was entered in the state court action determining fair rental value to be $75.00 for the inside lots and $85.00 for the waterfront lots.

This Court previously granted Debtor's motion to reject the tenant leases. *Matter of Riverside Village, Inc.*, 94 B.R. 750 (Bankr.M.D.Fla.1988). The rejection of the tenants' leases requires the resolution of several issues before this Chapter 11 case can proceed. The tenants' pre-petition claims can be considered within the confines of the plan. The issue of whether or not the state law extends, expands, or perpetuates the tenants' tenancy as contemplated by Section 365(h)(1) will be the subject of a subsequent order. To be addressed here is the effect of Section 365(h)(2). Within that context, the issues are:

(1) The classification and extent of the tenants' post-petition claims which arose within the time period between the filing of the petition and the date of the leases rejection; and

---

1. Interestingly, it appears the Debtor's water system could meet the state environmental protection agency's standards for water purity by having it's water system reclassified in accordance with Florida law. The water itself would not be any purer, only the standards would be lowered. Conversely, county health department experts contend reclassification would not change their position as to portable water.

(2) The post-rejection damages which may be set off under Section 365(h)(2). Both the post-petition claims and the post-rejection damages will be predicated upon this Court's determination of the property's fair rental value.

Compared to all other mobile home facilities in the area, the Debtor's mobile home park is at the bottom rung of the ladder regarding amenities and facilities. The Debtor's park is the only one in Hillsborough County, Florida on a portable water notice. It is without dispute the portable water problem affected the fair market value. The Debtor's principal suggested the tenants' hostility also affected the fair market value. Nonetheless, from the date of the filing of the petition through the date of this hearing, the fair rental value of the property has deviated only slightly.

The Debtor contends that a fair rental value ranges from $135.00 to $145.00 a month. The Debtor's expert, based upon a comparative analysis of mobile home parks in the area, contends the fair rental value as of the date of the hearing ranges from $120.00 to $130.00 per lot. Tenants' economics expert, based upon an economic analysis of the various parks in the area; the relocation of mobile homes; and the consumer price index opined that the fair rental value beginning December 1, 1988 is $85.00 to $96.00 per lot. The tenants' appraiser, based upon the fair market value of lots without portable water, contends the fair rental value as of January 1, 1989 is $75.00 for inland lots and $85.00 for waterfront lots. The tenants' appraiser's comprehensive study, along with the economist's economic analysis, is persuasive. The Court determines that at the date of commencement of this case the fair rental value of a lot in the Debtor's mobile home park to be $75.00 for inland lots and $85.00 for waterfront lots. The Court further heard testimony as to the tenants' costs for obtaining portable water. Separate evidence has been submitted by the parties establishing the rents paid by each tenant and the water expense deductions claimed. The evidence shows the appropriate rent owed by each tenant, any setoff amount for water purchase, and whether there has been any payments by any tenant.

As to the fair market value of various tenants' mobile homes, the tenants' appraiser determined the average fair market value of a home in the park to be $6,800; the lowest fair market value of one of the homes being $3,000. Various appertenances were removed from mobile homes which caused relocation of the homes to be quite difficult, the extent of the damage being unascertainable until after the move. An expert in moving mobile homes contends most local mobile home parks would not accept the tenants' homes in question because of the age and size of those homes. The tenants presented this evidence in order to establish what their damages could be under Section 365(h)(2) as a setoff to any rental due Debtor after the rejection of the leases. The evidence presented is not of the tenants' actual expenses, but only of estimates of future setoff amounts. Section 365(h)(2) only provides for setoff to the maximum rental value amount. Unfortunately, the tenants may be faced with costs in excess of the rents due under the lease. Such expenses, however can only be deducted from the fair rental value on those rents that are post-rejection and only to the extent of the fair rental value during the remaining term of the lease under Section 365(h)(1).

Accordingly, it is

ORDERED, ADJUDGED AND DECREED the fair rental value is hereby determined to be $75.00 a month for rental on inland lots and $85.00 a month for waterfront lots. It is further

ORDERED, ADJUDGED AND DECREED that each tenant residing in the Debtor's mobile home park from the date of filing of the petition, June 29, 1987, to the date of the order approving rejection of the leases, December 21, 1988, is required,

if they have not already done so, to pay the Debtor the fair rental value as set forth above. The tenant may deduct from each monthly payment due the actual cost of portable water purchased. Any tenant in arrears of these payments shall have fifteen (15) days from the entry of this order to pay said rental arrearages. Any failure to pay rental arrearages due to Debtor within fifteen (15) days of this order will be deemed to be a default under the lease; Debtor may then proceed in state court to evict said tenant. It is further

ORDERED, ADJUDGED AND DECREED any tenant who has overpaid the rental amounts shall have an administrative claim for amounts overpaid. The Debtor shall give each tenant holding an administrative claim a credit on future monthly rentals up to the date of rejection of the lease. Thereafter any rental balance in favor of tenants is an administrative expense payable as a condition of confirmation. It is further

ORDERED, ADJUDGED AND DECREED that the fair rental value of each lot *subsequent* to the order allowing the rejection of the leases remains at $75.00 a month per lot for inland lots and $85.00 a month per lot for waterfront lots. Tenants shall be obligated to make such payments to the Debtor as required by the lease but shall be permitted to deduct any actual damages under Section 362[365](h)(2) of the Bankruptcy Code. Any tenant seeking to claim such damage shall file a written monthly statement to Debtor of the actual expenses incurred that month which are entitled to be setoff against the rents due. If such setoff exceeds the amount of the rents, said tenant can carry forward to subsequent months, the expenses remaining over the fair rental value. However, any expense carry over will terminate at the time a tenant relinquishes possession of his lot.

DONE AND ORDERED at Tampa, Florida on <u>May 15, 1989.</u>

(s) <u>Thomas E. Baynes</u>
THOMAS E. BAYNES, Jr.
U.S. Bankruptcy Judge