**In re M & B PRINTING EQUIPMENT CORP., Debtor.**

**M & B PRINTING EQUIPMENT CORP., Plaintiff.**

v.

**ATLANTIC NATIONAL BANK, Defendant.**

**Bankruptcy No. 81–01085–BKC–JAG. Adv. No. 81–0391–BKC–JAG–A.**

United States Bankruptcy Court, S. D. Florida.

Dec. 10, 1981.

Antonio J. Soto, III, Jack R. Maro, P.A., Miami, Fla., for defendant.

Richard W. Smith, Johnson & Smith, Fort Lauderdale, Fla., for plaintiff-debtor.

PARTIAL FINDINGS AND CONCLUSIONS AND ORDER REOPENING EVIDENCE AND SETTING HEARING

JOSEPH A. GASSEN, Bankruptcy Judge.

This adversary case was tried before the court on October 5, 1981 on the complaint of

the plaintiff-debtor (C. P. No. 1) and the answer and affirmative defenses of the defendant, Atlantic National Bank (C. P. No. 3).

The court has considered the pleadings, the evidence presented at trial consisting of testimony as well as some five exhibits admitted into evidence and the memoranda submitted by the parties post-trial. It is the plaintiff's contention that the letter agreement of July 21, 1981, denoted consignment agreement (Plaintiff's Exhibit No. 1), gave it the exclusive right of sale and entitled it to the ten percent commission referred to therein as well as reimbursement of its costs, notwithstanding that the actual sale of the personal property involved was made by the defendant-bank without plaintiff's help. The defendant on the other hand states that it would not have entered into such an agreement except for the fact that the plaintiff concealed that it was a debtor-in-possession under a chapter 11 proceeding in this court and further that the plaintiff did not make a sale prior to being informed that the bank had itself obtained a purchaser and consummated a sale.

The evidence shows that at the defendant's request Robert D. Feldman, president of the plaintiff, had made an appraisal of the equipment which the bank proposed to sell (Plaintiff's Exhibit No. 2). The evidence further shows that Feldman telephoned Fort Lauderdale Transfer and Rigging, Inc. from the defendant's office for the purpose of arranging transfer of the equipment to the M & B premises as per Plaintiff's Exhibit No. 1 (Plaintiff's Exhibit No. 3) and incurred a $528.84 obligation which it is uncontroverted could not be avoided after the arrangements were made. Prior to entering into the agreement (Plaintiff's Exhibit No. 1) the plaintiff through Robert Feldman had devoted two hours to making an appraisal of the equipment for the bank and rendered its statement in the amount of $170 for said appraisal simultaneously with making the original agreement (Plaintiff's Exhibit No. 4). No one on behalf of the bank had made any objection to that statement at the time it was rendered.

The evidence further establishes that the plaintiff through Feldman had secured a prospective purchaser for the equipment who was scheduled to come from another city some distance away to look at the equipment and hopefully purchase it at or above the appraised value of $13,450. In the meantime and before the plaintiff's prospect could view the equipment and even before the transfer company could move it, the bank obtained a purchaser and consummated a sale for the equipment in the amount of $17,000.

The evidence is not clear as to whether or not the plaintiff's prospect ever actually viewed the equipment and made an offer but there is no evidence as to what that purchaser would have paid, if anything, and whether or not there would have been terms acceptable to the bank. It is clear, however, that the equipment was never moved from the bank's premises prior to the sale by it to the purchaser obtained by it. All of the foregoing occurred within two days. The debtor after learning of the bank's sale to another person submitted a statement for its ten percent commission in the amount of $1,700 based upon the sale by the bank for $17,000 (Plaintiff's Exhibit No. 5).

The plaintiff contends that the consignment agreement (Plaintiff's Exhibit No. 1) gave it the exclusive right of sale and that it is entitled to its ten percent commission on the $17,000 sale price as well as its costs expended, even though the purchaser was obtained and the sale made by the bank without any help from the plaintiff (except perhaps for the appraisal which had theretofore been submitted by the plaintiff).

A factor, consignee or commission merchant is one who receives possession of goods and has the power to sell them for a commission. *Gadsden County Tobacco Co. v. Corry*, 103 Fla. 217, 137 So. 255 (1931); 32 Am.Jur.2d, Factors and Commission Merchants, § 1, 2, 17–23. "The law regulating the transactions of factors is largely the outgrowth of commercial usage, and such

usage is constantly appealed to in interpreting or defining their authority." *Gadsden* at 257. While the Florida Uniform Commercial Code addresses the distinction between a consignment and an outright sale, it does not deal with remuneration to a consignee for providing its services in selling goods and does not control the relationship between seller/consignor and consignee in that regard. Neither has the court found any other Florida statute applicable to this relationship.

The agreement between the parties is styled "Consignment Agreement". The agreement gave M & B the right to sell the equipment for a commission and contemplated possession by M & B. Although the property was not yet on the M & B business premises at the time it was sold by the bank, the court concludes that M & B had constructive possession. The equipment was physically located on the premises of a third party, but M & B had been given, and had taken control of it. Feldman made arrangements with the bank's knowledge and approval for the equipment to be moved, and had made an appraisal and commenced the process of finding a buyer. Therefore the result should be the same as if the moving of the equipment had been completed, and it had been sold from the M. & B premises.

No evidence was submitted on commercial usage and whether or not a consignee would customarily receive a commission on the facts as found. The court will withhold its conclusion until a hearing is held on that issue.

The court finds no merit in the defense that the bank did not know it was dealing with a debtor-in-possession. The essence of the concept of reorganization is that the debtor continues doing business, and its ability to enter into and perform contracts such as this is not affected. The debtor-in-possession status has no relevance to whether or not it should be paid a commission here.

By reason of the foregoing, it is

ORDERED that the evidence in this adversary case be reopened and a further hearing shall be held on *Monday, January 4, 1982, at 9:00 a. m., in the United States Courthouse, Room 203C, 299 East Broward Boulevard, Fort Lauderdale, Florida,* for presentation of evidence on the matter of commercial custom and usage only.