**In re J.T. MORAN FINANCIAL CORP., et al., Debtor.**

**J.T. MORAN FINANCIAL CORP., a Delaware Corporation, and Moore & Schley, Cameron & Co., a New York Limited Partnership, Plaintiff,**

v.

**JESUP & LAMONT INCORPORATED, a Delaware Corporation, Defendant.**

Bankruptcy Nos. 90 B 20078, 90 B 20086 and 90 B 20087.
Adv. No. 90 ADV. 6099.

United States Bankruptcy Court,
S.D. New York.

Jan. 23, 1991.

Gusrae, Kaplan & Bruno, New York City, for defendant.

Scheffler Karlinsky & Stein, and Nachamie Hendler & Spizz, New York City, for debtors.

## DECISION ON MOTION FOR RELIEF PURSUANT TO BANKRUPTCY RULE 7012

HOWARD SCHWARTZBERG, Bankruptcy Judge.

Defendant, Jesup & Lamont, Inc. ("Jesup"), has moved pursuant to Fed.R.Civ.P. Rule 12(b)(6) and Bankruptcy Rule 7012(b) to dismiss the second, third and fourth claims asserted in the above-captioned debtors' adversary proceeding to recover damages allegedly sustained because of Jesup's failure to perform certain provisions contained in an assets purchase agreement between the parties.

The debtors, J.T. Moran Financial Corp. and Moore & Schley, Cameron & Co., are affiliated entities engaged in the securities investment business, which filed with this court petitions for Chapter 11 relief on January 29 and January 30, 1990, respectively. On January 31, 1990, the debtors applied to this court for an order authorizing them to reject certain unexpired leases including the debtors' lease for the fifth floor of premises located at 45 Broadway, New York, New York. On March 5, 1990, this court entered an order which permitted the debtors to reject their lease for the fifth floor at the 45 Broadway premises.

On July 27, 1990, the debtors commenced an adversary proceeding against the defendant, Jesup. The complaint alleges that by an agreement dated January 11, 1990, the debtors agreed to sell certain assets to

Jesup in consideration of a purchase price of $3 million. As part of the transaction between the parties, it was agreed that Jesup would endeavor to rent the 24th floor at the 45 Broadway premises and obtain a release from the landlord for one of the two locations in the building then occupied by the debtors on the 4th and 5th floors. If such release was not obtainable, Jesup agreed that it would sublease the 5th floor of the 45 Broadway building. This provision was stated in the agreement as follows:

> Jesup & Lamont will endeavor to rent from the landlord of 45 Broadway the 24th floor of 45 Broadway, provided that the landlord of 45 Broadway release JTM (J.T. Moran) from one floor of JTM's current lease for the 4th and 5th floor of 45 Broadway. In the event that the landlord does not agree to rent the 14th floor to J & L and release JTM from one floor of its lease as above described, J & L will negotiate with the landlord for space at 45 Broadway and if such negotiation does not result in the landlord's release of JTM of one floor, as above described, then and in such event J & L will sublease the 5th floor of 45 Broadway for JTM on terms no less favorable then (sic) the terms existing under JTM's lease for the 5th floor of 45 Broadway. In the event J & L sublets the 5th floor or 24th floor from JTM, the effective date of such sublease shall be the Closing Date. The rent payments for the 5th floor at 45 Broadway are substantially as set forth in Attached Exhibit F.

The complaint alleges that Jesup entered into a lease with the landlord of the 45 Broadway building and took possession of the 24th floor, but failed to perform its obligations under the agreement by (1) failing to have the debtors released from the obligations with respect to the 5th floor and (2) failing to enter into a sublease with the debtors for the 5th floor at 45 Broadway on terms no less favorable than those in the existing lease. Additionally, the complaint asserts that although the debtors have rejected the 45 Broadway lease, the landlord has asserted a claim for rent for the premises, including the 5th floor.

The second claim for relief asserted in the debtors' complaint, recites Jesup's failure to assume the debtors' obligations for the rental of the 5th floor at 45 Broadway, for which the debtors seek damages because of Jesup's failure to sublet the 5th floor and relieve the debtors of this obligation.

The third claim seeks a declaratory judgment that Jesup is liable for the rent with respect to the 5th floor at 45 Broadway.

The fourth claim in the debtors' complaint is for specific performance of the January 11, 1990 agreement between the parties insofar as it requires Jesup to enter into a sublease with the debtors for the 5th floor at 45 Broadway. In view of the fact that the debtors have rejected their lease for the 45 Broadway premises, they cannot expect to compel the defendant to perform a sublease under the lease which they rejected. Accordingly, the debtors withdrew this fourth claim at the court hearing with respect to Jesup's motion.

## DISCUSSION

■ Having successfully moved to reject a lease with the landlord of the 45 Broadway premises promptly following the filing of their Chapter 11 cases, the debtors, nonetheless, maintain that they may thereafter hold the defendant liable for failing to comply with an agreement with the debtors to sublet premises under the very lease which the debtors had already rejected. To state the issue is to decide it. Having eliminated their own prime lease, the debtors undertake the role of orphans in bankruptcy, carrying financial burdens resulting from their own act of rejection, which they seek to shift to the defendant at a time when the debtors lack capacity to consummate the proposed sublease.

■ The creation of a sublease depends upon the continuing viability of a prime lease, so that the rejection of the prime lease also results in the rejection of the sublease. *In re Dial–A–Tire, Inc.*, 78 B.R. 13, 16 (Bankr.W.D.N.Y.1987). When the debtors rejected the prime lease, it prevented the creation of any property interest to

which the proposed subleasehold could attach after the prime lease was terminated. *In re Stalter & Co., Ltd.,* 99 B.R. 327 (E.D.La.1989). When a prime lease fails, so does the sublease. *In re Shopper's Paradise, Inc.,* 8 B.R. 271, 275 (Bankr.S.D. N.Y.1980); 34 N.Y.Jur., *Landlord and Tenant* § 270 (1964). Indeed, Jesup's ability to perform its agreement to enter into a sublease with the debtors was further impaired by the debtors when they moved for an order authorizing the rejection of the prime lease, but failed to give Jesup notice of their motion. Having by their own conduct precluded Jesup from performing the obligation to enter into a sublease with the debtors, they cannot now hold Jesup to task for having failed to do an act which the debtors made impossible to accomplish. Accordingly, the second and third counts in the complaint fail to state a claim upon which relief can be granted within the meaning of F.P.Civ.P. Rule 12(b)(6) and Bankruptcy Rule 7012(b).

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding in accordance with § 157(b)(2)(A).

2. Having obtained a court order authorizing the debtors to reject an unexpired lease for premises located at 45 Broadway, New York City, the debtors may not thereafter hold the defendant, Jesup, liable for failing to sublet from the debtors a portion of the premises covered by the rejected unexpired lease.

3. The second and third claims asserted in the debtors' complaint fail to state a claim upon which relief can be granted and are dismissed pursuant to Fed.R.Civ.P. Rule 12(b)(6) and Bankruptcy Rule 7012(b).

SETTLE ORDER on notice.