**In re CHILD WORLD, INC., Debtor.**

**Bankruptcy No. 92 B 20887.**

United States Bankruptcy Court, S.D. New York.

July 7, 1992.

Weil, Gotshal & Manges, New York City, for debtor; Martin J. Bienenstock, of counsel.

Warshaw Burstein Cohen Schlesinger & Kuh, New York City, for PolyGram Distribution Group, Inc.

Dann Pecar Newman Talesnick & Kleiman, Indianapolis, Ind., for WRC Properties, Inc.

## DECISION ON MOTION FOR ORDER REJECTING LEASES

**HOWARD SCHWARTZBERG,**
Bankruptcy Judge.

The Chapter 11 debtor, Child World, Inc., has moved pursuant to 11 U.S.C. § 365(a) for an order authorizing it to reject a commercial real estate lease for premises located in Marion County, Indiana. A sublessee of the debtor, PolyGram Group Distribution, Inc. ("PolyGram"), opposes the debtor's motion on the ground that such rejection should not oust PolyGram from possession of the premises or deprive PolyGram of its right to possession of racks attached to the premises, which are used to store PolyGram's inventory of compact discs and audio cassettes. The debtor's landlord, WRC Properties, Inc. ("WRC"), consented to the motion.

## FINDINGS OF FACT

1. The debtor filed with this court its voluntary petition for relief under Chapter 11 of the Bankruptcy Code on May 6, 1992 and has continued to operate its business as a debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. On December 9, 1983, the debtor entered into a lease agreement with Park 100 Development Company ("Park 100"), an Indiana general partnership, as lessor, for commercial real estate premises located in Marion County, Indiana, together with improvements to be constructed on the premises, for a term of ten years. The lease was amended on June 1, 1984. Thereafter, WRC succeeded to the right of Park 100 as lessor under the amended lease.

3. On October 21, 1991, with the consent of WRC, the debtor entered into a sublease for a portion of the leased premises with PolyGram as subtenant. The monthly fixed rental of $30,000.00 was payable directly to WRC. The sublease provides that PolyGram, as sublessee, may use part of the premises under the master lease with WRC and the racks attached to the premises. The sublease provides that it may be terminated by either party on thirty days written notice.

4. The racks affixed to the premises are attached throughout the building and are bolted to the premises. The building's sprinkler system runs through the racks. It would take approximately three weeks to dismantle the racks.

5. On May 14, 1992, the debtor filed a motion upon which this court entered an order dated May 15, 1992, authorizing the debtor to conduct a going out of business sale, without prejudice to the rights of creditors to object to the relief requested by filing objections by June 1, 1992. The debtor contemplates a sale of the racks on the leased premises as part of its going out of business sale.

6. On June 25, 1992, the debtor filed the instant motion to reject its lease with WRC, effective July 31, 1992, and to reject its sublease with PolyGram, effective July 15, 1992.

7. The debtor chose July 15, 1992 as the termination date of the sublease with PolyGram because it wishes to be able to sell the racks on the premises before July 31, 1992, when it seeks to terminate its lease with WRC, so that it will not be liable for an additional month's rent for the period commencing August 1, 1992. The debtor currently owes in excess of $300,000.00 in prepetition rent to WRC over and above the rental received by WRC from the sublessee, PolyGram. The debtor also owes WRC approximately $70,000.00 for postpetition rent.

8. The evidence produced by the debtor amply demonstrates that it is in the debtor's best business interest to reject the lease with WRC and the sublease with PolyGram. However, the debtor's going out of business sale and rejection of the leases in question would interfere with PolyGram's use and occupancy of the subleased premises. PolyGram maintains all of its inventory of compact discs and audio cassettes on the racks. The problem of having to find alternative storage facilities for its inventory by July 15, 1992 presents a serious problem for PolyGram.

9. The debtor has no further need to use the premises and derives no benefit from the leases in question. In fact, the

leases are an economic detriment to the debtor because they result in a continuing net loss to the debtor and have no saleable value to the estate.

## DISCUSSION

■ A debtor may assume or reject an unexpired lease in accordance with 11 U.S.C. § 365(a) in the exercise of its best business judgment. Generally, when the debtor is the lessor, the lessee's possessory interest is preserved for "the lessee ... for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law." 11 U.S.C. § 365(h)(1). In the instant case, the debtor is both lessee and lessor; it is the lessee under the prime lease with WRC and it is the lessor under the sublease with Poly-Gram. Although the debtor seeks to reject both the prime lease and the sublease, it does not wish to fix a simultaneous effective date for both leases. It would like to terminate the sublease with PolyGram as of July 15, 1992 so that it might sell the storage racks affixed to the warehouse before it is required to vacate the premises in accordance with its motion to reject the prime lease with WRC effective July 31, 1992. The debtor contends that if it cannot sell and remove the racks before the July 31st termination of the prime lease it will be unable to sell the racks thereafter with the result that the estate will lose a valuable asset. Whether or not the racks are fixtures is immaterial as to the debtor's motion to reject the sublease because whether or not the racks are fixtures or personalty, the rejection will give rise to a claim for damages by the sublessee. In so far as WRC, as the owner of the realty, is concerned, there is no issue as to whether the racks are fixtures because WRC consents to the removal of the racks.

■ The issue for determination is not the debtor's right to reject the sublease as well as the prime lease, but rather, may the debtor oust the sublessee from possession after rejection, despite the preservation of the possessory interest expressed in 11 U.S.C. § 365(h). If the debtor sought to terminate the prime lease and the sublease simultaneously on July 31, 1992, there would be no question that PolyGram, as sublessee, could not occupy the leased premises after the debtor's rejection of the prime lease. *In re Stalter & Co. Ltd.*, 99 B.R. 327, 330 (E.D.La.1989). This is so because the sublease depends upon the continuing viability of the prime lease, and the rejection of the prime lease also results in the rejection of the sublease. *In re J.T. Moran Financial Corp.*, 124 B.R. 924, 925 (Bankr.S.D.N.Y.1991); *In re Dial–A–Tire, Inc.*, 78 B.R. 13, 16 (Bankr.W.D.N.Y.1987). When a prime lease fails, so does the sublease. *In re Shoppers Paradise, Inc.*, 8 B.R. 271, 275 (Bankr.S.D.N.Y.1980); 74 N.Y.Jur.2d *Landlord and Tenant* § 270 (1988). Had the debtor assumed the prime lease, but rejected the sublease, the subtenant, PolyGram, would have had the benefit of the preserved possessory interest afforded under 11 U.S.C. § 365(h). *Stalter,* 99 B.R. at 331. However, the debtor's rejection of the prime lease also resulted in the rejection of the sublease and deprived the sublessee, PolyGram, of any right to occupy the leased premises following such rejection. *Id.*

■ In the instant case, the debtor rejected both the prime lease and the sublease simultaneously, but fixed the effective termination of the prime lease approximately three weeks after the termination of the sublease so that it could sell and remove the storage racks, with the landlord's consent, without having to be liable for another month's rent. Hence, Poly-Gram's right of occupancy terminates when this court enters an order approving the rejection of both the prime lease and the sublease. The fact that the debtor and the debtor's possessory interest will continue after rejection until the end of this month, whereas the sublessee's possessory interest will terminate upon the entry of the order approving the rejection of both leases, is not an abridgement of any of the sublessee's rights under 11 U.S.C. § 365(h). As a sublessee, PolyGram has no possessory interest to preserve following the debtor's rejection of the prime lease. However,

**90**

the immediate termination of PolyGram's possessory interest may magnify Poly-Gram's damage claim. The rejection of an unexpired and unassumed lease gives rise to a claim for damages on the same basis as a prepetition breached contract. 11 U.S.C. § 365(g)(1). Presumably, if Poly-Gram were afforded more time to remove its inventory, its damage claim might be reduced. In setting an earlier termination date for the sublease than the prime lease, the debtor has concluded that the advantages resulting from the sale and removal of the racks outweigh the liability to the prime lessor for an additional month's rent and the possibility that PolyGram may sustain greater damages for having to remove its inventory sooner. In this context, the court accepts the debtor's best business judgment that the advantages outweigh the disadvantages.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the parties pursuant to 28 U.S.C. § 1334 and 28 U.S.C. § 157(b)(2)(A).

2. The debtor's motion pursuant to 11 U.S.C. § 365(a) to reject its prime lease with WRC, effective July 31, 1992 and to reject its sublease with PolyGram, effective July 15, 1992, is granted.

3. The debtor's rejection of its prime lease and its sublease does not result in the preservation of any possessory interest pursuant to 11 U.S.C. § 365(h) in favor of the sublessee, PolyGram.

SETTLE ORDER on notice.