**In re LEE ROAD PARTNERS, LTD., Debtor.**

**Bankruptcy No. 192–19210–260.**

United States Bankruptcy Court, E.D. New York.

June 9, 1993.

Marks & Murase, New York City by Eric S. Brown, for debtor.

Cascone, Cole & Savage, New York City by Denise L. Savage, for F.W. Woolworth Co.

Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. West Palm Beach, FL, by Robert N. Gilbert, for Ross Stores.

Drinker, Biddle & Reath, Philadelphia, PA, by Andrew C. Kassner, for Penn Ins. and Annuity Co.

## DECISION

CONRAD B. DUBERSTEIN, Chief Judge.

This matter is before the Court upon the motion of the Debtor, Lee Road Partners, Ltd. (the "Debtor"), which seeks an order pursuant to § 365(a) allowing it to reject a lease with F.W. Woolworth Co. ("Wool-

worth"), wherein the Debtor is the lessor and Woolworth the lessee.

## FACTS

The Debtor is the owner and operator of the Lee Road Shopping Center located in Orlando, Florida. The Debtor acquired the subject property in the Fall of 1984.

On May 21, 1971, the Debtor's predecessor in interest, as lessor, leased 100,000 sq. ft. to Woolworth, as lessee (the "Overlease"). Thereafter, from 1971–1982, a Woolco store, operated by Woolworth, occupied the leased premises.

In 1983, the Woolco store was closed and the premises were subleased by Woolworth as follows:

a. On May 2, 1983, Woolworth, as sublessor, leased space to J. Byrons which subsequently assigned its interest in this sublease to Ross Stores, Inc. ("Ross"). This sublease is scheduled to expire on January 30, 1994; however, it provides for five successive options to extend the sublease for five years per option.

b. On August 9, 1983, Woolworth, as sublessor, leased space to J.J. Whispers ("Whispers"). This sublease is scheduled to expire on January 30, 1994; however, it provides for two successive options to extend the sublease for five years per option.

c. On August 12, 1983, Woolworth, as sublessor, leased space to First Thompson Joint Venture ("First Thompson"). The sublease is scheduled to expire on January 30, 1994; however, it provides for five successive options to extend the sublease for five years per option.

On November 30, 1984, subsequent to the Debtor becoming owner of the subject property, First Thompson assigned its interest in its sublease to the Debtor creating a unique situation in which the Debtor was (1) the owner/lessor of the entire premises with Woolworth as lessee and (2) the sublessee of the subleased area with Woolworth as sublessor (the "Underlease"). According to the Debtor, Woolworth is reaping a windfall inasmuch as it collects approximately $1.00 more per sq. ft. ($100,000 per annum) under its subleases than it pays to the Debtor under the Overlease.

On February 18, 1992, Penn Insurance and Annuity Company ("PIA") commenced foreclosure proceedings in the Circuit Court in Orange County, Florida, against the Debtor in accordance with a mortgage it holds affecting the subject property.[1] The Court's attention has been called to the fact that the Overlease existed prior to PIA obtaining its mortgage on the premises. Woolworth's Supplemental App. at 8 n. 4. This action was pending as of the filing date.

On June 23, 1992, Woolworth, as sublessor, started an eviction action under the Underlease against the Debtor, as sublessee, in the Circuit Court of Orange County, Florida, because the Debtor was in substantial arrears.[2] This action was also pending as of the filing date.

On October 30, 1992, the Debtor filed its petition for relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court for the Eastern District of New York.

On February 8, 1993, Woolworth filed a motion seeking to dismiss the Debtor's Chapter 11 case, or in the alternative, to transfer venue to the Middle District of Florida.[3] Thereafter, on March 17, 1993, the Debtor made the within motion to reject the Overlease with Woolworth.[4] Both

---

1. The Debtor had defaulted on repaying $5.2 million in loans made by PIA which are secured by a first mortgage on the shopping center.

2. Woolworth contends that as of the filing date, rental and tax arrears under the Underlease were approximately $60,000. However, the Debtor disputes that any tax arrears have occurred and instead asserts that only $25,000 is in arrears for defaults in January, February and March of 1992.

3. The Court has reserved decision on this motion pending this decision.

4. Although the Debtor did make a motion to extend the time to assume or reject the Underlease, this motion has been withdrawn pending this decision.

Woolworth and Ross filed papers in opposition to this motion.[5]

## A. Rejection of Overlease

The Debtor seeks to reject the Overlease pursuant to § 365(a)[6] on the grounds that it is in the best interest of the estate. Following rejection of the Overlease, the Debtor plans to negotiate new leases with the existing tenants which would require them to bear their share of real property taxes, etc. By so doing, the Debtor would be able to capture for itself "Woolworth's windfall" and thereby increase its revenues by approximately $100,000 per annum.[7]

Central to the Debtor's argument is its contention that following rejection of the Overlease, Woolworth and its sublessees will no longer be entitled to possession of the premises. Although § 365(h) allows a lessee to remain in possession of the leasehold following rejection of the lease,[8] the Debtor argues that the term "remain in possession" is limited to tenants in physical possession of the property. Since Woolworth is functioning as a landlord and not physically possessing the property, the Debtor concludes that Woolworth is therefore ineligible for protection under § 365(h).[9]

The Debtor contends that its view is in accord with the legislative intent behind the enactment of the statute. In support of this position, the Debtor notes that *In re Stable Mews Assocs.*, 35 B.R. 603 (Bankr. S.D.N.Y.1983) and *In re Upland/Euclid, Ltd.*, 56 B.R. 250 (Bankr. 9th Cir.1985), which addressed the issue of altering or amending the terms of a lease following rejection by a debtor-lessor, concerned tenants who were in physical possession of the

property. More importantly, the Debtor relies on *In re Marina Enter., Inc.*, 14 B.R. 327 (Bankr.S.D.Fla.1981), for the proposition that physical possession is necessary for protection under § 365(h).

In opposition, Woolworth and Ross claim that terminating the Overlease would not be in the best interest of the estate and would actually hinder the Debtor's ability to effectuate a successful plan of reorganization. Additionally, they contend that both § 365(h) and Florida law prevent either Woolworth or the subtenants from being ousted from possession of the leasehold in the event the Debtor is allowed to reject the Overlease.

## DISCUSSION

From the outset, the Court notes that "[p]roblems concerning the rejection of unexpired leases of real property when the debtor is the lessor rather than the lessee are infrequently litigated...." 2 Lawrence P. King et al., Collier on Bankruptcy, ¶ 365.09, at 365–57 (15th ed. 1992). *See* 1 D. Epstein, S. Nickles & J. White, Bankruptcy 452 (1992) (very few reported cases involving rejection of leases by lessors).

Under § 365(a), the trustee or debtor-in-possession may reject an unexpired lease subject to the court's approval. 11 U.S.C. § 365(a); *In re Airport Executive Ctr., Ltd.*, 138 B.R. 628, 629 (Bankr. M.D.Fla.1992). Although the Bankruptcy Code contains no instructions or standards for properly reviewing such decisions, the business judgment test is considered the proper method to evaluate such actions. *In re Minges*, 602 F.2d 38 (2d Cir.1979); *In re Child World, Inc.*, 142 B.R. 87 (Bankr. S.D.N.Y.1992); *In re Hooker Invs., Inc.*,

---

5. On March 24, 1993, this Court reserved decision on the motion. It also denied the Debtor's motion to approve a stipulation between it and PIA which, among other things, allowed PIA to exclusively review the Debtor's reorganization plan.

6. Section 365(a) allows the debtor in possession, subject to court approval, to assume or reject any executory contract or unexpired lease.

7. Although terminating the lease could give rise to a damage claim by Woolworth, the Debtor

asserts that such a claim would not hinder its chances for a successful reorganization.

8. Pursuant to § 365(h), following the rejection of an unexpired lease of real property by the debtor-lessor, the lessee has the option of remaining in possession of the leasehold.

9. The Debtor claims that Woolworth will most likely never have possession of the premises as its subleases with Ross and Whispers expire on the same date as the Overlease and contain identical renewal options.

131 B.R. 922 (Bankr.S.D.N.Y.1991); *In re Leibinger–Roberts, Inc.,* 105 B.R. 208 (Bankr.E.D.N.Y.1989); *In re Stable Mews Assocs., Inc.,* 41 B.R. 594 (Bankr.S.D.N.Y. 1984); *In re Shangri–La Nursing Ctr., Inc.,* 31 B.R. 367 (Bankr.E.D.N.Y.1983). This test requires that the trustee or debtor-in-possession demonstrate that rejection of the executory contract will benefit the estate. *Id.*

The Debtor maintains that rejecting the lease will benefit the estate. However, the Debtor's analysis of the benefits is predicated upon its ability to oust Woolworth and negotiate new leases with the existing tenants. In order to determine whether the Debtor's assertions are correct, it is necessary to determine Woolworth's rights under § 365(h).

### A. Statutory Construction

Section 365(h)(1) states in relevant part as follows:

> If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, ... the lessee ... may remain in possession of the leasehold ... under any lease ... the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1).

To properly interpret § 365(h), the Court's inquiry begins with the plain language of the statute. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). The Supreme Court, in discussing the Bankruptcy Code, has stated:

> [i]n such a substantial overhaul of the system, it is not appropriate or realistic to expect Congress to have explained with particularity each step it took. Rather, as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute.

*Id.* at 240–41, 109 S.Ct. at 1030. *See also In re Chateaugay Corp.,* 920 F.2d 183, 184 (2d Cir.1990).

Since the word "possession" is not defined within the statute, it is to be interpreted according to its ordinary, contemporary, common meaning. *In re Pioneer Inv. Servs.,* —— U.S. ——, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993); *Perrin v. United States,* 444 U.S. 37, 42, 100 S.Ct. 311, 314, 62 L.Ed.2d 199 (1979). Webster's Seventh New Collegiate Dictionary (1965) defines "possession" as:

1a: the act of having or taking into control

b: control or occupancy of property without regard to ownership

c: ownership

According to Black's Law Dictionary, possession is "[t]he detention and control ... of anything which may be the subject of property, for one's use and enjoyment, either as owner or as *the proprietor of a qualified right in it,* and either held personally or by another who exercises it in one's place and name." Black's Law Dictionary 1047 (5th ed. 1979) (emphasis added).

Although the Debtor argues that the scope of § 365(h) is limited to those in physical possession of the premises, proper statutory interpretation demonstrates otherwise. On its face, § 365(h) makes no reference whatsoever to any requirement of physical possession. As shown, the ordinary definition of possession is not limited to mere physical possession.[10] In analogous circumstances, the Supreme Court has refused to construe a statute in such a limiting fashion. *Hurtado v. United States,* 410 U.S. 578, 93 S.Ct. 1157, 35 L.Ed.2d 508 (1973).

In *Hurtado,* the petitioners asserted that 28 U.S.C. § 1821, which required the government to pay to a "witness attending in any court ... $20 for each day's attendance," should be interpreted as requiring physical attendance by a witness in a courtroom. *Id.* at 580, 93 S.Ct. at 1159. However, the Supreme Court held that such sti-

---

10. In discussing possession, Black's notes that in general, the law recognizes two kinds: actual and constructive. Black's Law Dictionary 1047 (5th ed. 1979).

pends should be paid even to those witnesses detained in custody pending their testimony. In construing the statute, the Court stated, "§ 1821 does not speak in terms of 'physical' or 'actual' attendance and we decline to engraft such a restriction upon the statute." 410 U.S. at 584, 93 S.Ct. at 1162.

## B. Legislative History

Having concluded that the plain language of § 365(h) is not limited to physical possession, it is to be noted that "[t]he plain meaning of legislation should be conclusive, except in the 'rare cases [in which] the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters.'" *Ron Pair*, 489 U.S. at 242, 109 S.Ct. at 1031 (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Inasmuch as the Debtor claims that allowing the reach of § 365(h) to extend beyond tenants in physical possession would thwart the legislative intent behind the statute, the Court will briefly examine into its legislative history.

Section 70(b) of the Bankruptcy Act, the predecessor to § 365(h), provided that "[u]nless a lease of real property expressly otherwise provides, a rejection of the lease or of any covenant therein by the trustee of the lessor does not deprive the lessee of his estate." According to Colliers on Bankruptcy, section 70(b) was "really only declaratory of the prevailing view that a rejection of a lease does not of itself terminate the lease, but was regarded by the drafters as desirable in clarifying situations not often litigated and in protecting the innocent lessee who had based his affairs on the term provided in the lease." 2 Lawrence P. King et al., Collier on Bankruptcy, ¶ 365.09, at 365–58 (15th ed. 1992); *See In re New York Investors Mut. Group Inc.*, 153 F.Supp. 772 (S.D.N.Y.1957), *aff'd sub nom. Cohen v. East Netherland Holding Co.*, 258 F.2d 14 (2d Cir.1958) (equity receiver may refuse to provide heat, electricity, etc., but the lessee is still entitled to possess the premises).

In enacting § 365(h), Congress sought to "codify a delicate balance between the rights of a debtor-lessor and the rights of its tenants," *Stable Mews*, 41 B.R. at 594, by preserving certain expectations of parties to real estate transactions. *Upland/Euclid*, 56 B.R. at 253. Specifically, Congress concluded that rejection of a lease by a debtor-lessor should not deprive a tenant of his estate for the term for which he bargained. H.R.Rep. No. 595, 95th Cong., 1st Sess. 349–350 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 60 (1978), U.S.Code Cong. & Admin.News 1978, p. 5787. *See also* Weintraub & Resnick, Bankruptcy Law Manual ¶ 7.10[10] at 7–73 (1986).

■ Furthermore, courts construing § 365(h) have concluded that the statute was designed to preserve a lessee's possessory interests in its leasehold while allowing a debtor-lessor to escape the burden of providing continuing services to a tenant. *See, e.g., Upland/Euclid*, 56 B.R. at 252, 255; *In re Wood Comm Fund I, Inc.*, 116 B.R. 817, 818 (Bankr.N.D.Okla.1990); *In re Legg*, 51 B.R. 444, 446 (Bankr.D.Va.1985); *Stable Mews*, 41 B.R. at 599; *Acme Precision Bldg., Ltd. v. Dayton Forging & Heat Treating, Inc. (In re Acme Precision Bldg.)*, 23 B.R. 79 (Bankr.S.D.Ohio 1982); *In re LHD Realty Corp.*, 20 B.R. 717, 719 (Bankr.S.D.Ind.1982); *In re Belize Airways, Ltd.*, 12 B.R. 387, 390 (Bankr. S.D.Fla.1981); *In re 1438 Meridian Place, N.W., Inc.*, 11 B.R. 352 (Bankr.D.C.1981). Thus, rejection by a debtor-lessor does not terminate the lease so completely as to divest the lessee of his estate in property. *Id. See* Winfield, *Rejection of Nonresidential Leases of Real Property in Bankruptcy: What Happens to the Mortgagee's Security Interest?*, 17 Pepperdine L.Rev. 429 (1990) (it is well-established that rejection of a lease by a lessor-debtor under § 365 does not affect the lessee's interest in the lease).

■ Following rejection, the lessee is entitled to retain the "essential elements of a lease—possession, term and rent." *In re Arden and Howe Assocs., Ltd.*, 152 B.R. 971, 975 (Bankr.E.D.Cal.1993). In accordance with the Code's intent that a tenant not be deprived of his estate for the term

for which he bargained, *Solon Automated Servs., Inc. v. Georgetown of Kettering, Ltd. (In re Solon Automated Servs.)*, 22 B.R. 312, 318 (Bankr.S.D.Ohio 1982), the lessee's leasehold estate cannot be diminished, changed or modified due to bankruptcy's intervention. *Wood Comm Fund I, Inc.*, 116 B.R. at 818.

■ In short, § 365(h) seeks to prevent forcible evictions whenever possible. *In re Carlton Restaurant, Inc.*, 151 B.R. 353, 356 (Bankr.E.D.Pa.1993). For example, the reference to "time share interests" in § 365(h) results from Congress's aversion to the result in *In re Sombrero Reef Club, Inc.*, 18 B.R. 612 (Bankr.S.D.Fla.1982). In *Sombrero*, the court interpreted a prior version of § 365(h) as excluding time-share owners from coming within the statute's protection.[11] *Sombrero*, 18 B.R. at 618. In amending the statute to include such interests, the Senate Report characterized the legislation as "urgently needed." S.Rep. No. 65, 98th Cong., 1st Sess. 77 (1983). *See* Weintraub & Resnick, Bankruptcy Law Manual § 7.10[10] at 7–74 (Congress enacted the 1984 amendments to § 365(h) in response to *Sombrero Reef Club*, 18 B.R. at 618); 2 Lawrence P. King et al., Collier on Bankruptcy, ¶ 365.09, at 365–61 (15th ed. 1992) (same). Given that such owners may physically possess the premises for only a few days per year, if at all,[12] it is clear that Congress did not intend "possession" to include only physical possession.[13]

## C. Florida Law

Having determined that neither the plain language nor the legislative history behind § 365(h) evince any requirement of physical possession, the Court's analysis now turns to state law. It is to be noted that the property is located in Florida and all the leases affecting the same, including the Woolworth lease, were executed in the state of Florida. As the Supreme Court stated in *Butner v. United States:*

> Property interests are created and defined by state law. Unless some federal interest requires a different result, there is no reason why such interests should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a State serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving 'a windfall merely by reason of the happenstance of bankruptcy.' (citation omitted). The justifications for application of state law are not limited to ownership interests....

440 U.S. 48, 55, 99 S.Ct. 914, 918, 59 L.Ed.2d 136 (1979). More recently, the Supreme Court noted that absent a controlling federal rule, the determination of property rights is to be analyzed under state law. *Nobelman v. Am. Savings Bank (In re Nobelman)*, —— U.S. ——, ——, 113 S.Ct. 2106, 2110, 124 L.Ed.2d 228 (1993).

■ It is important to note that § 365(h) refers to "possession of a leasehold" rather than a more limited phrase such as premises. Under Florida's Uniform Commercial Code, a "leasehold interest" is defined as "the interest of the lessor or the lessee under a lease contract." Fla. Stat. § 680.1031(1)(m) (1993). Inherent in a leasehold interest is the right to possession. *In re Belize Airways*, 12 B.R. 387, 388 (Bankr.S.D.Fla.1981). Moreover, in Florida, the granting of a leasehold estate is, for all practical purposes, equivalent to absolute ownership. *Gray v. Callahan*, 143 Fla. 673, 679, 197 So. 396, 398 (Fla.1940); *Baker v. Clifford–Mathew Inv. Co.*, 99 Fla. 1229, 1232, 128 So. 827, 829 (1930); *Rogers v. Martin*, 87 Fla. 204, 99 So. 551, 552 (1924); *Dade County v. Transportes Aer-*

---

**11.** This version of § 365(h) made no reference to time-share interests.

**12.** Many timeshare owners choose not to assert their possessory rights and instead "bank" their time for use at some other site at some other date.

**13.** Although a holder of an interest in a time-share plan can hardly be said to be "in possession" of the premises, all that is required under § 365(h) is that the holder remain in possession of an interest under the timeshare. Similarly, all that is required for a lessee is that he/she remain in possession of the leasehold.

*eos Nacionales, S.A.,* 298 So.2d 570, 573 (Fla.Dist.Ct.App.), *cert. denied,* 305 So.2d 206 (Fla.1974).

 Accordingly, a tenant under a lease in Florida need not be in possession of the premises in order to sublet it to others. *See Weinhardt v. M & M Builders,* 28 Fla.Supp. 156, 157 (Fla.Cir.Ct.1967). *See also* 34 Fla.Jur.2d Landlord and Tenant § 92 (1992). Further, once sublet, the estate of the sublessee cannot be defeated by either the surrender of the leasehold by the lessee, or the foreclosure of a mortgage on a master lease. *Bobo v. Vanguard Bank and Trust Co.,* 512 So.2d 246, 247 (Fla. Dist.Ct.App.1987);[14] *Brunswick Corp. v. Berlo Vending Co.,* 196 So.2d 497, 498 (Fla.Dist.Ct.App.1967). *See also* 34 Fla. Jur.2d Landlord and Tenant § 95 (1992); 49 Am.Jur.2d Landlord and Tenant § 512 (1993).

 Pursuant to Florida law, possession of property is either actual or constructive. 42 Fla.Jur.2d Property § 16 (1992). Unlike actual possession which refers to an actual and continuous occupancy or exercise of full dominion, constructive possession is that which the law annexes to the title. *Id.* In order to have constructive possession of property, one must knowingly have both the power and intention at a given time to exercise dominion or control over the property. *See Klein v. Unidentified, Wrecked & Abandoned Sailing Ves-*

sel, 568 F.Supp. 1562, 1566 (S.D.Fla.1983); *In re M & B Printing Equip. Corp.,* 18 B.R. 411, 413 (Bankr.S.D.Fla.1981). *See also* 42 Fla.Jur.2d Property § 16 (1992). Relevant factors to consider include whether the possessor is making an ordinary use and taking the ordinary profits of the land, e.g., 42 Fla.Jur.2d Property § 16 (1992), and whether the possessor is paying rent and/or any portion of the taxes or mortgage payments which may be attributable to the property. *See Marina,* 14 B.R. at 334.

 Based on the foregoing, it is clear that under Florida law, both constructive and actual possession fall within the scope of § 365(h).[15] This conclusion is bolstered by *Marina,* 14 B.R. at 327, the very case which the Debtor relies on for limiting § 365(h) to physical possession.[16] The *Marina* court, in discussing possession under § 365(h), stated that it "recognize[d] the principle of constructive possession of unimproved real estate...." *Marina,* 14 B.R. at 334. Similarly, in *Sombrero,* the court noted that the concept of constructive possession and possession by agents might be encompassed in § 365. *Sombrero,* 18 B.R. at 618.

 In the present case, it is apparent that Woolworth is in possession of the leasehold and has at least constructive possession of the premises. Unlike the tenant

**14.** The Court notes that Florida law apparently differs from the law in this Circuit. In *In re Hotel Governor Clinton,* 96 F.2d 50 (2d Cir. 1938), the court terminated a lease which, by its terms, was subordinate to a first mortgage. The court reasoned that since the undersecured mortgagee could foreclose and wipe out a junior mortgage or subsequent encumbrance, it could also wipe out the subordinate lease. However, under Florida law, the foreclosing mortgagee takes possession of the premises subject to the outstanding lease especially where, as here, the lease is not specifically subordinated to the mortgage. *See Bobo,* 512 So.2d at 247.

**15.** Although the Debtor claims that giving effect to the Florida cases violates the Supremacy Clause of the United States Constitution, the Court finds this argument unpersuasive in light of *Butner,* 440 U.S. 48, 99 S.Ct. 914, *Nobelman,* — U.S. at —, 113 S.Ct. at 2109, and the statute's clear language allowing possession to

the extent available under applicable nonbankruptcy law. *See also In re Riverside Village, Inc.,* 102 B.R. 858 (Bankr.M.D.Fla.1989) (interplay between § 365(h) and Florida's Mobile Home laws); *In re Riverside Village, Inc.,* 94 B.R. 750 (Bankr.M.D.Fla.1988) (same).

**16.** In *Marina,* the court examined whether a lessee had the type of possession contemplated by § 365(h) where the lease did not commence until the lessor constructed a hotel/casino. The court noted that: (1) the property was vacant and unimproved; (2) there had been no physical use of the property since the original lease had been made; and (3) no rent had ever been paid by the lessee nor had the lessee made any mortgage or tax payments. Since the lessee had no obligations to make such payments until the building was substantially completed, the court found that the lessee was not in the kind of possession which would give it any rights under § 365(h)(1).

in *Marina,* 14 B.R. at 327, Woolworth did take possession of the premises. Further, it has continuously utilized the premises via its own store or by subletting to others, a customary business practice. According to the attorney for the Debtor, Woolworth has continuously paid all rent and taxes required under the lease. Additionally, Woolworth has performed significant amounts of maintenance on the premises.

Although at first blush, it may appear that this decision conflicts with the recent decision in *In re Harborview Dev. 1986 Ltd. Partnership,* 152 B.R. 897 (Bankr. D.S.C.1993), close scrutiny demonstrates otherwise. In *Harborview,* the Debtor leased space to Carroll's Foods, Inc. ("CFI") whose owner was the 99% general partner of the debtor. CFI, in turn, subleased the space to a restaurant company. Under its sublease, CFI realized $6,000 more per month than it paid to Harborview.

After filing for relief under Chapter 11 of the bankruptcy Code, the court appointed a trustee to pursue allegations of "fraud, dishonesty, preferences, gross mismanagement and insider-related activities." *Id.* at 900. The trustee thereupon moved to reject and terminate the lease. The trustee was joined in this motion by a mortgagee who specifically argued that the CFI sublease was set up by insiders of the debtor to divert monies from the estate. The bankruptcy court granted the motion and subsequently refused to issue a stay pending appeal. Thereafter, the trustee negotiated a new lease with the restaurant.

On appeal, the district court affirmed the bankruptcy court's decision. In discussing possession under § 365(h), the court exam-

ined both actual and legal possession. It concluded that CFI lacked actual possession in light of the sublease and furthermore that it lacked legal possession under South Carolina law.[17] The court then held that the bankruptcy court's decision to terminate the lease was not "clearly erroneous" in light of the equities of the situation, CFI's lack of possession, and its insider nature vis-a-vis the debtor.

Although the trustee in *Harborview* and the Debtor in this case sought similar objectives, i.e., to gain the higher rent going to a lessee, the parallel between the two cases ends there. Unlike *Harborview,* which was decided according to the laws of South Carolina, the instant matter is governed by Florida law. As shown, Florida law differs markedly from that of South Carolina.

Additionally, in *Harborview,* it was alleged that the lessee was receiving a higher rent based on a deliberate misuse of its inside relationship to the debtor. Unlike the lessee in *Harborview,* Woolworth negotiated its subleases at arm's length for the legitimate purpose of running a business. While § 365(h)'s policy against forcible evictions is not contravened by evicting an insider whose lease is bottomed on bad faith, the very essence of the statute would dissipate were this Court to allow Woolworth, a legitimate lessee, to be ousted from the premises.[18]

## D. Business Judgment Test

 As noted previously, the business judgment test requires that the trustee or debtor-in-possession demonstrate that

---

**17.** South Carolina law considers the landlord to be in possession of the leasehold. S.C.Code Ann. § 27–35–70 (Law.Co-op.1976 as amended).

**18.** This conclusion is to be distinguished from that of *Carlton Restaurant,* 151 B.R. at 353. In *Carlton,* a restaurant operator remained in possession of its leasehold pursuant to § 365(h) as its landlord had rejected the lease during its (the landlord's) bankruptcy. Subsequently, the tenant closed its restaurant and filed its own bankruptcy petition. Since the lessee had closed its doors and did not intend to use the leasehold, the court reasoned that the policy against forcible evictions vanished. Thus, the court refused to allow the tenant to assume and assign the

sublease. Unlike *Carlton,* where the tenant-debtor sought to assign a lease which it no longer needed, Woolworth is a lessee seeking to stay in possession and continue to avail itself of the benefits, if any, of its subleases which have existed for over nine years. Inasmuch as Woolworth finds the leases profitable, it cannot be said that Woolworth no longer needs them. Moreover, if the Debtor were allowed to terminate Woolworth's lease, it would possess the power to evict the sub-tenants unless they reach a new accord with the Debtor. Thus, the policy against forcible evictions does not vanish but remains in full force.

**64**

rejection of the executory contract will benefit the estate. *Minges,* 602 F.2d at 42–43; *Child World,* 142 B.R. at 89; *Leibinger-Roberts,* 105 B.R. at 212. Since the lessee's leasehold interest remains intact under § 365(h), rejection of the lease does not appear to be in the best interests of the estate. *In re Friarton Estates Corp.,* 65 B.R. 586, 594 (Bankr.S.D.N.Y.1986).

In *Friarton,* the debtor-lessor sought to reject leases of rent-controlled apartments and re-let the apartments at market rates. *Friarton,* 65 B.R. at 593. There, as here:

> The leases were negotiated at arm's length; if they are less attractive now than they might be, the difference is attributable solely to changes in the economic climate and not to the debtor's financial reverses. The bankruptcy laws are intended as a shield, not as a sword. Their purpose is to minimize a fiscal chaos and disruption, not to aggravate it.

*Friarton,* 65 B.R. at 594 (quoting *In re Penn Cent. Transp. Co.,* 458 F.Supp. 1346 (E.D.Pa.1978)). Although rejection allows a debtor-lessor to reduce services to its lessee, it can not be used to raise the rent to market value. *See Upland/Euclid,* 56 B.R. at 254–55; *See also Stable Mews,* 41 B.R. at 598–99 (bankruptcy should not be used to confer competitive advantage to an ongoing business). Here, the Debtor has failed to set forth any burdens associated with the lease except for the fact that it is burdened by not receiving the rents directly from the subtenants. It is plain to the Court that rejection is simply a tool with which the Debtor hopes to oust Woolworth from the premises and gain for itself the higher rents Woolworth charged to Ross and its other sublessees.

### CONCLUSION

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and it is a core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O).

2. Woolworth is in possession of the leasehold and has at least constructive possession of the premises.

3. Woolworth is entitled to the protection of § 365(h) so as to remain in possession of the leasehold for the term of the lease and any renewal options contained therein.

4. The Debtor's motion to reject the Overlease is denied.

SUBMIT AN ORDER CONSISTENT WITH THIS OPINION.