**In re Frank AUBE, Cynthia Aube, Debtors.**

**Bankruptcy No. 87–00451.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 16, 1993.

---

Thomas A. Tarro III, Fortunato & Tarro, Warwick, RI, for Robert Aube.

J. Ronald Fishbein, Providence, RI, for Cynthia Aube.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr., Bankruptcy Judge.

Heard on April 14 and 20, 1993 to determine the amount of Robert Aube's claim against the Estate, which arises out of an alleged remaining forty year leasehold interest in the Debtors' real estate. Previously, on October 2, 1992, after hearing on Robert's objection to the Trustee's notice of intended sale of the property, he was paid $33,000 on account of said claim, whereupon the entire parcel was sold by the bankruptcy Trustee in November 1992, free and clear of all interests, including Robert's. We must now determine the amount, if any, to which Robert is entitled beyond the $33,000.

## BACKGROUND

On November 22, 1982, prior to his marriage to Cynthia, the co-debtor, Frank Aube, leased a 7.7 acre parcel of property to his son Robert for a period of 50 years, with the rent set at ten dollars per year. The leased premises are part of a larger parcel consisting of 77 acres, a pond, and a substantial house. Under the agreement Robert was prohibited from subletting or assigning his interest without the lessor's written consent. The lease was formally executed and recorded in the Town of Foster land evidence records. (Indenture of Lease, Claimant's Ex. 1.)

In 1983, Robert began operating a plant nursery on the leased property, and he outfitted and improved the land for this use by clearing four of the 7.7 acres, constructing a small greenhouse and barn, and drilling two wells for irrigation. Robert operated the nursery until 1987, when he stopped operating the business because of its unprofitability. In 1987 Robert sold most of the nursery assets to a competitor, and disconnected the electricity and plumbing in the greenhouse. Thereafter, Robert testified that he visited the leased premises approximately every six to eight months "either to check its condition or to pick up miscellaneous items he had stored there."

In November 1992, with Court authorization, the Trustee sold the entire property, including the acreage, the house, and leased premises for $270,000. In seeking approval of his Notice of Intended Sale, the Trustee felt it was necessary to obtain Robert's release of his alleged leasehold interest in the property, and it was this leverage which allowed Robert to extract $33,000 from the Trustee.[1] It was also agreed at that time that a hearing would be held to determine the total amount of Robert Aube's claims against the Estate, and that is the subject of the instant proceeding. In addition to his claim regarding the lease, Robert also seeks $2,891 as reimbursement for shrubs and other landscaping which he planted around the house, plus $3,000 loaned to his parents in March 1990.

## DISCUSSION

■ The Bankruptcy Code permits a debtor-lessor to reject an unexpired lease. 11 U.S.C. § 365(a), (h)(1). In construing this section, courts have held that "the statute was designed to preserve a lessee's possessory interests in its leasehold while allowing a debtor-lessor to escape the burden of providing continuing services to a

---

1. The Trustee also agreed that if Robert's claims were determined to be less than $33,000, he would nevertheless be entitled to retain that amount.

tenant.... [R]ejection by a debtor-lessor does not terminate the lease so completely as to divest the lessee of his estate in property." *In re Lee Road Partners, Ltd.,* 155 B.R. 55, at 60 (Bankr.E.D.N.Y.1993). However, the rejection of the unexpired lease operates as a breach thereof. 11 U.S.C. § 365(g). When this happens, the lessee "may retain the estate which will include ʾall enforceable renewal terms that the tenant may insist upon unilaterally [or] ... treat the lease as terminated and assert a claim for damages flowing from that breach." 2 Collier on Bankruptcy ¶¶ 365.-09, 365–60 (15th ed. 1993); 11 U.S.C. § 365(h)(1). In the instant case, Robert Aube opted to terminate his tenancy, and seeks breach of contract damages in excess of $69,000.

### THE LEASE

■ A threshold issue, however, is whether Robert Aube held a valid leasehold interest in the subject property as of the date of the petition. Under the agreement the lessee was required to make annual rental payments of $10, and Robert testified that he observed that requirement without fail, even though the nominal payment appeared to be just a formality. Robert also testified that he paid the rent in cash, at random times, whenever he saw his father. The only rent payment ever made by check was in November 1991, *after* his father's death, payable to his stepmother, Cynthia Aube, who is the real party in interest in this proceeding. This check remains uncashed.

■ Upon consideration of the entire record, we are unable to accept Robert's contention that he made the rent payments required under the lease. We find it very unlikely that he would have taken the trouble to regularly and timely make rent payments, yet not have obtained receipts or simply paid by check to evidence his formal adherence to the covenant to pay rent, and when questioned as to specific payment

dates or surrounding circumstances, Robert was unable to recall any details. While we find that Robert's breach of the lease was fatal to his standing to now enforce its provisions, we have sufficient concern over the eventual outcome of this ruling that, for appellate purposes, we will also address the damage claim.[2]

### DAMAGES

■ We have recently held that " '[d]amages must be proven with a reasonable degree of certainty, and the plaintiff must establish reasonably precise figures, and cannot rely on speculation.' " *In re Newport Offshore, Ltd.,* 155 B.R. 616, at 620 (Bankr.D.R.I.1993) (quoting, *Kelley v. Medeiros (In re Kelley),* 131 B.R. 532, 534 (Bankr.D.R.I.1991)). Where the action involves a damage claim against a lessor based upon "breach of a covenant with respect to use of the premises, which breach deprives the tenant in some measure of the benefit of the lease, the measure of damages is ... the difference between the rental value of the premises in the condition contracted for and their value as they actually exist.", 49 Am.Jur.2d *Landlord and Tenant* § 187 (1970); *see also,* Restatement (Second) of Property § 10.2 (1977) (listing several elements that may be considered when computing damages based upon a lessor's breach).

Notwithstanding the foregoing, which we consider to be the correct statement of the rule, Robert Aube argues that the replacement cost of the leasehold improvements constitutes the appropriate measure of damage, because of the unique character of the property and the absence of comparable leases in the vicinity of the subject property. Robert's valuation expert, Thomas Sweeney, testified that he had no opinion as to the value of Robert's leasehold interest, but could estimate the replacement cost of the premises. In his opinion, based upon the hypothetical purchase of 7.7 acres of comparable land in November 1992, plus a barn, greenhouse,

---

**2.** The Debtor also argues that Robert Aube abandoned his leasehold interest when he terminated the business and liquidated the assets. To establish the abandonment of a leasehold interest, it must be shown that the lessee "vacated the premises and demonstrated a clear intent not to

be bound under the lease." *Turks Head Realty Trust v. Shearson, Lehman, Hutton, Inc.* 736 F.Supp. 422, 427 (D.R.I.1990). The evidence presented on this issue does not support a finding that Robert intended not to be bound under the lease.

two wells drilled for irrigation, and clearing four acres, the value of the site would be $70,000. From this, he subtracts $66 which he estimates to be the present value of the lessor's right to receive ten dollars per year for forty years, for a total claim of $69,934.

Despite several caveats that the claimant's method of calculating damages was, in this Court's view, legally defective, Robert Aube nevertheless pressed this as his only theory of recovery, without supporting authority either at trial or in his post-trial memorandum, for this most unorthodox (and, to us, incomprehensible) approach to valuing a leasehold interest. For these reasons, we reject Mr. Sweeney's testimony as to damages, and rule that Robert Aube has failed to establish the amount of his claim with competent evidence.

In any event, based upon the entire record and especially the fact that the Debtors' entire 77 acre parcel of property (which included a substantial house) sold for $270,000, we find that Robert Aube has already benefited unconscionably, and that *any* claims he had against the Estate have been more than satisfied in full, including the $5,891 discussed *supra*. The balance of his claim is DISALLOWED.

Enter Judgment consistent with this opinion.