**In re HARBORVIEW DEVELOPMENT 1986 LIMITED PARTNERSHIP, debtor in Chapter 11—Case No. 91-01176.**

**Civ. A. No. 2:92–0775–18.**

United States District Court,
D. South Carolina,
Charleston Division.

April 1, 1993.

R. Michael Drose, N. Charleston, SC, Trustee.

Charles P. Summerall, Charleston, SC.

Allan R. Holmes, Charleston, SC.

## ORDER

NORTON, District Judge.

This matter is before the court on an appeal from the Bankruptcy Court filed by Carroll's Foods, Inc. (hereinafter "CFI"). The appellees are Provident National Assurance Company and R. Michael Drose, Trustee (hereinafter, collectively the "appellees").

## I. BACKGROUND

A. On January 29, 1988, Harborview Development 1986 Limited Partnership (hereinafter "Harborview" or "debtor") entered into a Restaurant Lease (hereinafter the "Lease") with CFI for a monthly rental of $7,000.00. The leased premises are in the Carroll Building which is owned by Harborview.

B. On May 15, 1989, CFI sub-leased the same premises to Apple South, Inc. (hereinafter "Apple South") for a monthly rental of $13,000.00. From the date of the sub-

lease, Apple South has operated an Applebee's restaurant in the leased premises.

C. CFI was then and is now a South Carolina corporation, with no other business activity. CFI is 100% owned by Marcus R. Durlach, III, who is the 99% general partner of Harborview. CFI is, thus, an insider of Harborview as defined by 11 U.S.C. § 101(31).[1]

D. Provident National Assurance Company (hereinafter "Provident") commenced an action in the South Carolina State Court of Common Pleas in Charleston County on February 19, 1991, seeking to foreclose on a non-recourse mortgage executed by Harborview encumbering the Carroll Building.

E. On February 26, 1991, Harborview filed a Petition under Chapter 11 of the United States Bankruptcy Code which stayed the mortgage foreclosure case under applicable federal bankruptcy law.

F. On September 12, 1991, the Bankruptcy Court ordered that a trustee be appointed for Harborview. Pursuant to the order, Michael Drose (hereinafter the "Trustee") was appointed as Chapter 11 Trustee of Harborview.

G. On October 9, 1991, the Trustee filed a motion with the Bankruptcy Court seeking the rejection and termination of CFI's unexpired Lease with Harborview.

H. On November 12, 1991, the Bankruptcy Court, upon recommendation of the Trustee, ordered that the automatic stay be lifted to allow Provident to complete the mortgage foreclosure case.

I. On January 31, 1992, the Bankruptcy Court entered its order rejecting and terminating CFI's Lease.

J. On February 4, 1992, CFI filed a motion with the Bankruptcy Court seeking stay of the order rejecting and terminating the CFI Lease. This motion was denied by the Bankruptcy Court on February 11, 1992.

K. On February 5, 1992, CFI appealed the January 31st Bankruptcy Court order.

L. In the absence of an order precluding the enforcement of the Bankruptcy Court order of January 31, the Trustee took steps to enter into a new lease with Apple South, covering the same premises that had been subject to the debtor-CFI Lease which was rejected and terminated by the Bankruptcy Court order.

M. Appellees moved to dismiss CFI's appeal on issue preclusion and mootness grounds. This court denied that motion by order filed January 6, 1993. The merits of the appeal came before the court for hearing on February 5, 1993.

## II. ANALYSIS

CFI urges four grounds in support of its request that this court reverse the Bankruptcy Court's order rejecting and terminating the Harborview–CFI Lease. These four grounds are:

1. The Bankruptcy Court erred in rejecting the Lease pursuant to § 365(a) of the Bankruptcy Code;

2. The Bankruptcy Court erred in concluding that the Lease was terminated;

3. The Bankruptcy Court erred in concluding that CFI was not entitled, because it did not have a possessory interest in the leasehold estate rejected, to invoke the provisions of 11 U.S.C. § 365(h) which would allow the lessee to collect all rents payable to it from its sub-tenant under the terms of the sub-lease; and,

4. The Bankruptcy Court erred in issuing, after *ex parte* consideration, its order of January 31, 1992, in the same form as was proposed by one of the parties, without the remaining parties having been provided an opportunity for review and objection.

CFI and the appellees agreed at the hearing that these grounds are subject to a "clearly erroneous" standard of review by

---

1. "'insider' includes—
 (C) if the debtor is a partnership—
 (i) general partner in the debtor;
 (ii) relative of a general partner in, general partner of, or person in control of the debtor;
 (iii) partnership in which the debtor is a general partner;
 *(iv) general partner of the debtor;* or
 (v) person in control of the debtor; ...."
 11 U.S.C. § 101(31)(C) (emphasis added).

this court. *See also* Fed.R.Bankr.P. 8013; *Lubrizol Enter., Inc. v. Richmond Metal Finishers, Inc.*, 756 F.2d 1043 (4th Cir. 1985), *cert. denied*, 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). Each of the four grounds is addressed below.

## A. Rejection of the Lease

*Lubrizol* sets forth the test in the Fourth Circuit for examining the appropriateness of a trustee's attempt to reject an unexpired lease under 11 U.S.C. § 365(a): [2]

> In bankruptcy litigation the issue is of course first presented for judicial determination when a debtor [3], having decided that rejection will be beneficial within contemplation of § 365(a), moves for approval of the rejection. The issue thereby presented for first instance judicial determination by the bankruptcy court is whether the decision of the debtor that rejection will be advantageous is so manifestly unreasonable that it could not be based on sound business judgment, but only on bad faith, or whim or caprice. That issue is one of fact to be decided as such by the bankruptcy court by the normal processes of fact adjudication. And the resulting fact determination by the bankruptcy court is perforce then reviewable up the line under the clearly erroneous standard.

756 F.2d at 1047.

■ CFI has no credible argument that the Bankruptcy Court was "clearly erroneous" in its findings in support of the Trustee's position that the Lease should be rejected. The Bankruptcy Court's order specifically refers to the Trustee's belief that he used sound business judgment in moving to reject the Lease. Bankruptcy Court Order, p. 3 (Finding of Fact No. 7) (hereinafter "Order"). The order also finds that "[n]o evidence was submitted to show that

the trustee was exercising bad faith, whim or caprice." *Id.* (Finding of Fact No. 8). The Bankruptcy Court thus properly applied the holding in *Lubrizol* that:

> [t]he rule as applied to a bankrupt's [or trustee's] decision to reject an executory contract because of perceived business advantage requires that the decision be accepted by courts unless it is shown that the bankrupt's [or trustee's] decision was one taken in bad faith or in gross abuse of the bankrupt's [or trustee's] retained business discretion.

*Id.* Therefore, this court concludes that the Bankruptcy Court's order rejecting the Lease was not "clearly erroneous" and affirms that Court's rejection of the Lease pursuant to § 365(a) of the Bankruptcy Code.

## B. Termination of the Lease

■ The Trustee's motion asked the Bankruptcy Court to reject and terminate the Lease. In granting the motion, the Bankruptcy Court's order did not discuss the relationship between rejection and termination. Given the equities of this situation, however, together with the fact that CFI was not in possession (discussed below), and the further fact that CFI is an insider of the debtor, the Bankruptcy Court's decision that termination should necessarily follow from the rejection of the Lease in this case is not "clearly erroneous".

Courts have split on the issue of whether termination follows automatically from rejection under various subsections of § 365. *Compare In re Hawaii Dimensions, Inc.*, 39 B.R. 606 (Bankr.D.Haw.1984), *aff'd*, 47 B.R. 425, 427 (D.Haw.1985) (debtor-lessee's rejection terminates the landlord-tenant re-

---

**2.** "(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

**3.** The trustee and the debtor-in-possession in a Chapter 11 case have § 365(a) powers. *See* 11 U.S.C. § 1107(a) ("Subject to any limitations on

a trustee serving in a case under this chapter, and to such limitations or conditions as the court prescribes, a debtor in possession shall have all the rights, other than the right to compensation under section 330 of this title, and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under this chapter.").

lationship) [4] with *In re Picnic 'N Chicken, Inc.*, 58 B.R. 523, 525–26 (Bankr.S.D.Cal. 1986) (rejection does not necessarily terminate a lease agreement).

Acknowledging that termination does not always follow from rejection of a lease, appellees argue that the facts and circumstances of this case warrant termination of CFI's Lease with the debtor. Appellees point to the reference in the Bankruptcy Court order to "the insider nature of the lease transaction" in arguing that termination necessarily follows rejection of the Lease in this situation. *Order, p. 4. The Fourth Circuit has stated that:*

> A court of bankruptcy is a court of equity which exercises broad equitable powers; it is empowered to 'sift the circumstances surrounding any claim to see that injustice or unfairness is not done in administration of the bankruptcy estate. And its duty so to do is especially clear when the claim seeking allowance accrues to the benefit of an officer, director or stockholder.' *Pepper v. Litton*, 308 U.S. 295, 308, 60 S.Ct. 238, 246, 84 L.Ed. 281 (1939). A sufficient basis for rejecting the claims of an officer, director or stockholder may be simply the violation of the rules of fair play and good conscience or a breach of the standards of conduct which an officer or director in his fiduciary capacity owes the corporation, its stockholders and creditors.

*Braddy*, 352 F.2d at 84.

In its Response to Motion to Reject Lease of Carroll's Foods, Inc. (hereinafter "Response"), Provident joined in the Trustee's motion to reject and terminate the Lease and specifically argued that the CFI

sub-lease to Apple South "was set up by insiders of the Debtor to effectuate a pass through transaction allowing the diversion of monies from this estate." Response, p. 1. The Bankruptcy Court's order refers to the fact that the Lease was depriving the estate of $72,000 annual rental income, and it is clear to this court that "the insider nature of the lease transaction" was one of the underlying factors influencing the Bankruptcy Court's decision to reject and terminate the Lease. Order, p. 3. This point is emphasized by the Order Directing the Appointment of a Trustee (hereinafter "Appointment Order") filed September 12, 1991, in which the Bankruptcy Court finds "that cause exists for the appointment of a trustee ... to pursue the allegations of fraud, dishonesty, preferences, gross mismanagement and insider-related activities...." Appointment Order, p. 1.

While termination does not always follow automatically from the rejection of a lease, based on the facts and circumstances of this case, the Bankruptcy Court was not "clearly erroneous" in determining that the Lease should be rejected and terminated.

### C. Possession under Section 365(h)

Section 365(h)(1) of the United States Code provides in pertinent part:

> If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor ... the lessee ... under such lease ... may treat such lease ... as terminated by such rejection ... or, in the alternative, the lessee ... may remain in possession of the leasehold ... under any lease ... the term of which has commenced for the balance of such term and for any renew-

---

**4.** The Bankruptcy Court's Order cited *In re Hawaii Dimensions, Inc.* in its discussion on termination of the Lease. The appellant argues that this case is inapplicable to the present facts, stating that Harborview is a debtor-lessor; and therefore, § 365(h) of the Bankruptcy Code applies. Under the facts of this case and as will be further explained in the text below, however, this court finds that the Bankruptcy Court was not "clearly erroneous" in its conclusion to terminate the lease. This court acknowledges that termination does not always follow rejection. The Bankruptcy Court noted the insider relationships involved and its finding that the appel-

lant was not "in possession" of the leased premises so as to assert protection under 11 U.S.C. § 365(h), in invoking its equitable powers to conclude that the lease should be terminated. Order, p. 4. The Fourth Circuit has specifically stated that a bankruptcy court has the duty to examine *any claim* relating to an insider's relationship with the debtor. *Braddy v. Randolph*, 352 F.2d 80, 84 (4th Cir.1965). *Braddy* is based on the Supreme Court's decision in *Pepper v. Litton*, 308 U.S. 295, 306, 60 S.Ct. 238, 245, 84 L.Ed. 281 (1939) to the effect that insiders' "[d]ealings with the [debtor] are subjected to rigorous scrutiny...."

al or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1). CFI asserts that it remained "in possession" and thus retained its § 365(h)(1) election to treat the Lease as terminated or "remain in possession" of the leasehold. The Bankruptcy Court's order states that "CFI's efforts to establish possession of the leased premises ... were not persuasive in light of the admitted sublease of the property to Apple South and the insider nature of the lease transaction." Order, p. 4.

The only authority cited by CFI in support of its position is a one volume treatise entitled *Collier Real Estate Transactions and the Bankruptcy Code*, Section 3.06(11)(c) (L. Cherkis & L. King 1991). Aside from the unsupported language supporting CFI's position, the treatise recognizes that parties may include a contractual provision addressing the § 365(h) election in a sub-lease situation. *Id.* In this case, the Lease does not include any provision whereby Harborview recognizes and agrees that CFI would retain its § 365(h) election in the event of a sub-lease of the leased premises.

In light of the sub-lease to Apple South, it is clear that CFI did not remain in actual possession of the leasehold. On the issue of whether CFI retained legal possession of the leasehold, CFI and the appellees cite the same South Carolina statutes.

S.C.Code Ann. § 27–35–70, entitled "Person deemed in possession of real estate", provides:

> In all cases of tenancy the owner, landlord or person entitled to possession shall be deemed to be in possession of the real estate used or occupied by the tenant and the tenant shall be deemed to be holding thereunder.

S.C.Code Ann. § 27–35–70 (Law. Co-op. 1976 as amended).

The legal definitions of "Landlord" and "Tenant" are provided in § 27–33–10:

(7) *Landlord.—'Landlord'* shall be construed to include the owner or person in possession or entitled to possession of the real estate used or occupied by the tenant as well as the employer of farm laborers and domestic servants; and

(8) *Tenant.—'Tenant'* shall be construed to mean tenant at will, tenant for a term, tenant for years, domestic servant, farm laborer, sharecropper and agricultural renter.

*Id.* at § 27–33–10(7) & (8).

Examining the relationship between Harborview and CFI, it is clear that Harborview is "in possession" and CFI holds thereunder.[5] This interpretation of the statutes is also consistent with § 27–35–60, which sets out in pertinent part:

> [W]hen the premises have been sublet the sub-lessor, **as between himself and the sub-tenant or sub-lessee,** shall be deemed the landlord and the sub-lessee the tenant under him....

*Id.* at § 27–35–60 (emphasis added).

Based on these statutes, CFI argues that, as sub-lessor, it is deemed to be the "landlord" and as such is deemed to be in possession of the leased premises, while Apple South, as sub-lessee, is deemed to be the "tenant" and does not possess the leased premises, but merely occupies the space. CFI's Appeal Brief, p. 13. Section 27–35–60, however, only defines the rights that exist between a tenant (the sub-lessor) and its sub-lessee—it does not bestow rights on the sub-lessor that did not flow to the sub-lessor from its lease with the owner.

 Under South Carolina law, Harborview had legal possession of the premises and Apple South had actual possession of the premises. CFI's argument, if successful, would effectively erase the language "remain in possession" from § 365(h). To the contrary, the phrase "remain in possession" placed in that section by Congress implies continuation of existing possession on the part of the lessee. *In re Marina Enter., Inc.,* 14 B.R. 327, 334

---

**5.** Appellant asserts that the South Carolina statutes establish that CFI, vis a vis Apple South, is deemed to be "in possession" of the real estate.

The logical extension to CFI's own analysis is that Harborview, vis a vis CFI, is deemed to be "in possession" of the real estate.

(Bankr.S.D.Fla.1981). Accordingly, the Bankruptcy Court's decision that CFI's efforts to establish possession were "not persuasive" is not "clearly erroneous".

**D. Preparation of the Order on Appeal**

At the hearing, CFI did not forcefully pursue this last ground for appeal. At the conclusion of the hearing on the Trustee's motion to reject and terminate the Lease, the Bankruptcy Court advised the parties that it would take the matter under advisement and instructed the parties to prepare proposed orders by a certain date and submit them to the court. The parties were not instructed to share their proposed orders with each other nor did the court direct that either party should criticize or comment on the proposed orders submitted.

At the time the proposed orders were submitted, neither party was aware of what the Bankruptcy Court's eventual decision would be. Instead, the Bankruptcy Court was free in its discretion to utilize part or whole of the proposed orders submitted by the parties based upon the facts and law applicable to the case. Because there was nothing improper about this procedure, this ground will not support the reversal of the Bankruptcy Court's order rejecting and terminating the Lease.

### III. CONCLUSION

The Bankruptcy Court was not "clearly erroneous" in entering its order rejecting and terminating the Lease between Harborview and CFI. It is therefore,

**ORDERED,** that the Order of the Bankruptcy Court entered January 31, 1992 rejecting and terminating the CFI Lease be **AFFIRMED.**

**AND IT IS SO ORDERED.**

