**In re LEE ROAD PARTNERS,
LIMITED, Debtor.**

**LEE ROAD PARTNERS,
LIMITED, Appellant,**

v.

**F.W. WOOLWORTH COMPANY,
Appellee.**

Nos. 192–19210–260 (CBD),
CV–93–3276 (RJD).

United States District Court,
E.D. New York.

July 12, 1994.

Anthony M. Sabino, Marks & Murase, New York City, for Lee Road Partners, Ltd.

Denise L. Savage, New York City, for F.W. Woolworth Co.

Robert N. Gilbert, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., West Palm Beach, FL, for Ross Stores, Inc.

## OPINION AND ORDER

DEARIE, District Judge.

Appellant, Lee Roads Partners, Limited, ("the Debtor") appeals from an Order of Chief Bankruptcy Judge Conrad B. Duberstein of the Eastern District of New York denying its motion to reject its lease ("the Overlease") with F.W. Woolworth Co. ("Woolworth"). The bankruptcy court found Woolworth to be in at least "constructive possession of the premises," and thus entitled to the protections of 11 U.S.C. § 365(h)(1). The Debtor seeks reversal of the bankruptcy court's decision and a determination from this Court that Woolworth, as a matter of law, was *not* in possession of the leasehold, as that term is used in § 365(h)(1).

The Court finds that Woolworth remains "in possession" of the premises within the meaning of § 365(h)(1). Accordingly, the Court affirms the Order of the court below for essentially the reasons stated in Chief Judge Duberstein's thoughtful and well-reasoned opinion, familiarity with which is assumed. *See In re Lee Road Partners, Ltd.*, 155 B.R. 55 (Bankr.E.D.N.Y.1993).

### Background

The Debtor, who filed a voluntary petition under Chapter 11 on October 30, 1992, is the owner and operator of the Lee Road Shopping Center located in Orlando, Florida ("the Premises"). The Debtor acquired the Premises in the Fall of 1984, thereby becoming a party to an Overlease with Woolworth. In 1971, the Debtor's predecessor in interest had leased approximately 100,000 square feet to Woolworth. The lease provided for an initial term May 20, 1971 through January 30, 1994, with five five-year renewal options.

From 1971 through 1982, a Woolco store operated by Woolworth occupied the Premises. Thereafter, Woolworth subleased the Premises to various subtenants. One subtenant, J. Byrons, later assigned its interest in its sublease to Appellee Ross Stores, Inc. ("Ross Stores"). Another subtenant, First Thompson Joint Venture, later assigned its interest in its sublease to the Debtor. This latter event created a somewhat unusual circumstance—the Debtor in this action is both (1) the owner/lessor of the Premises with Woolworth as lessee and (2) the sublessee of the subleased area with Woolworth as sublessor. The Debtor is simultaneously a landlord and a tenant of a portion of the Premises.

Three events occurred in 1992 that are relevant to this action. First, on February 18th, Penn Insurance and Annuity Company ("PIA") commenced a foreclosure action against the Debtor who had defaulted on its $5.2 million mortgage. It is undisputed that the Overlease predates PIA's security interest in the Premises. Second, on June 23, 1992, Woolworth, as sublessor, began eviction proceedings against the Debtor, as sublessee, because the Debtor was in arrears. Finally, on October 30, 1992, the Debtor filed its Chapter 11 petition.

The parties have been involved in protracted litigation and have filed numerous motions in the bankruptcy court.[1] However, the only issue presently before this Court is Chief Judge Duberstein's denial of the Debtor's motion to reject the Overlease.

### Discussion

*Standard of Review*

■ A district court reviews a bankruptcy court's conclusions of law *de novo*. *See e.g., In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir.1992) (citation omitted). With respect to factual matters, "findings of fact, ..., shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." *Cohn v. United States Trustee (In re Ostas)*, 158

---

1. The litigation has been protracted even here in the district court. The Court notes that it agreed to a significant delay in hearing argument on this appeal at the behest of the parties, who, at the time, were engaged in settlement negotiations.

B.R. 312, 317 (N.D.N.Y.1993) (quoting 11 U.S.C.Bankr.Rule 8013 (West.Supp.1993)).

*Statutory Construction*

As a threshold matter, this case presents a straightforward issue of statutory construction—the meaning of the phrase "possession of the leasehold" in 11 U.S.C. § 365(h)(1) of the Bankruptcy Code. The parties appear to agree that this issue is dispositive of this motion: if the Court agrees with Chief Judge Duberstein's interpretation of this phrase, Woolworth would be entitled to remain in possession of the leasehold post-rejection, and, as a consequence, given the facts of this case, the Debtor's motion to reject the Overlease was properly denied.

The Debtor argues that the term "possession" in § 365(h)(1) is limited to physical possession, the act of possessing the *res.* Under this definition, Woolworth has not been in possession since 1983, when a Woolco store last occupied the Premises. If Woolworth is not in possession, it is unprotected by § 365(h)(1). Brief of the Appellant–Debtor at 7–8. Conversely, Appellees Woolworth and Ross Stores argue that, as landlord, Woolworth can remain in possession of the leasehold even when it no longer literally physically inhabits the Premises. Brief of Appellee Ross Stores at 6; Brief of Appellee Woolworth at 8. The bankruptcy court below rejected the Debtor's limited construction of the phrase, concluding that the word possession in § 365(h)(1) is "not limited to mere physical possession." *In re Lee Road Partners, Ltd.,* 155 B.R. at 59.

It is axiomatic that in every case which turns upon an issue of statutory construction, the analysis must begin with the language of the statute itself. *Landreth Timber Co. v. Landreth,* 471 U.S. 681, 685, 105 S.Ct. 2297, 2301, 85 L.Ed.2d 692 (1985); *U.S. v. Ron Pair Enterprises, Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). In its entirety, section 365(h)(1) of the Bankruptcy Code provides:

> If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, or a timeshare interest under a timeshare plan under which the debtor is the timeshare interest seller, the lessee or timeshare interest purchaser under such lease or timeshare plan may treat such lease or timeshare plan as terminated by such rejection, where the disaffirmance by the trustee amounts to such a breach as would entitle the lessee or timeshare interest purchaser to treat such lease or timeshare plan as terminated by virtue of its own terms, applicable non-bankruptcy law, or other agreements the lessee or timeshare interest purchaser has made with other parties; or, in the alternative, the lessee or timeshare interest purchaser may remain in possession of the leasehold or timeshare interest under any lease or timeshare plan the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee or timeshare interest purchaser under applicable nonbankruptcy law.

11 U.S.C. § 365(h)(1).

 Extracting the part of § 365(h)(1) that applies to this case, the statute provides that in a bankruptcy action where the debtor-lessor rejects the lease, "the lessee ... may remain in possession of the leasehold ... under any lease ... the term of which has commenced for the balance of such term, and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law." In other words, the lessee in these circumstances is given the special right to choose to remain in possession of the leasehold for the balance of the term of the lease and for any renewals or extensions that would ordinarily apply under nonbankruptcy law. The issue in this case is the meaning of the term "possession," since it is clear that the protections of § 365(h)(1) only extend to those in possession of the leasehold.

 When nontechnical words and phrases are not specifically defined in a statute, they should be interpreted according to their ordinary, natural meaning. *See Smith v. United States,* —— U.S. ——, ——, ——, 113 S.Ct. 2050, 2054, 2061, 124 L.Ed.2d 138 (1993) (citations omitted). In ordinary parlance, the term possession connotes ownership and control. One can certainly possess

property without actually inhabiting it. The conventional dictionaries cited by Chief Judge Duberstein confirm this familiar understanding of the word. *See In re Lee Road Partners, Ltd.,* 155 B.R. at 58 (citing Webster's Seventh New Collegiate Dictionary and Black's Law Dictionary). *See also* Brief of Appellee Ross Stores at 7 (citing The Concise American Heritage Dictionary). As Black's Law Dictionary states, possession is "[t]he detention and control ... of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and either held personally or by another who exercise it in one's place and name." BLACK'S LAW DICTIONARY 1047 (5th ed. 1979). The law recognizes two types of possession, actual and constructive. "A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." BLACK'S LAW DICTIONARY at 1047. Clearly, then, Woolworth's relationship to the Premises falls squarely within both the ordinary understanding and conventional dictionary definitions of possession.

■ Moreover, words must be interpreted and understood in context. "The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it." *Smith,* —— U.S. at ——, 113 S.Ct. at 2054. Thus, even if the term "possession" were innately ambiguous, the Debtor has to contend with the prepositional phrase immediately thereafter: "of the leasehold." As one commentator puts it, "the plain language unequivocally provides that the tenant will remain in possession *of the leasehold* under the *lease.* Physical possession is not required." Robert M. Zinman, *Landlord's Lease Rejection and the 1984 Amendments to § 365(h),* 13 AM.BANKR.INST.J. 16, 16 (1994) (emphasis in original). In addition, the phrase at issue in this case—which grants the lessee the right to remain in possession of a leasehold under a lease—is juxtaposed with language granting a timeshare interest purchaser the right to remain

in possession of a timeshare interest under a timeshare plan. Timeshare interest holders are only in literal, physical "possession" of a premises during a few allotted weeks (or days) of a year. *See In re Lee Road Partners, Ltd.,* 155 B.R. at 59; Zinman, 13 AM. BANKR.INST.J. at 16 n. 2. Understood in context, therefore, it becomes even clearer that Congress did not intend to limit the term possession in § 365(h)(1) to those who at any given time are in physical possession of the subject property. Thus, Woolworth, who still has a valid Overlease with the Debtor, remains in possession of the leasehold, notwithstanding the fact that it has sublet the Premises to a number of subtenants, including one who later assigned its interest in its sublease to the Debtor.

Since the meaning of the statutory text is clear, there is no legitimate need to consult the legislative history of § 365(h)(1) or its predecessor statute. On appeal, the Debtor does not argue that legislative history aids its construction of the statute in any way. And the Debtor certainly does not contend that the law's ordinary meaning is "demonstrably at odds with the intentions of its drafters." *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982). The plain language of the statute controls. While the legislative history fully supports Chief Judge Duberstein's interpretation of the statute, the common sense clarity of the term renders the analysis, although interesting, essentially superfluous.

*Florida Law*

Chief Judge Duberstein's interpretation of Florida property law is uncontested and, arguably, unnecessary to the determination of this case. Under Florida law, a leasehold interest is considered, for all practical purposes, equivalent to absolute ownership, subject only to the owner's reversionary rights at the expiration of the lease. Since this issue is undisputed by the parties, the Court will rely on the analysis of state law as set forth in the court below. *See In re Lee Road Partners, Ltd.,* 155 B.R. at 61–62. Suffice it to say, it is uncontroverted that Florida law embraces the concept of constructive possession and fully protects the right of Wool-

worth to sublet its property under these circumstances.

*Other Cases*

At this stage of the proceedings, the Debtor cites only three cases that purportedly contradict Chief Judge Duberstein's interpretation of the statute. *See In re Chestnut Ridge Plaza Assocs., L.P.,* 156 B.R. 477 (Bankr.W.D.Pa.1993); *In re Carlton Restaurant, Inc.,* 151 B.R. 353 (Bankr.E.D.Pa.1993); *In re Harborview Dev. 1986 Ltd. Partnership,* 152 B.R. 897 (D.S.C.1993). There is little need for extensive analysis of these cases; none bound the court below and they certainly are not controlling precedent for this Court. In any event, the Court finds nothing in these cases that causes it to alter its interpretation of § 365(h)(1).

The Debtor's apparent reliance on *Chestnut Ridge* is somewhat confounding. The quotation relied upon by the Debtor, *In re Chestnut Ridge Plaza Assocs., L.P.,* 156 B.R. at 482 n. 3, is certainly not the holding of the case. Indeed, contrary to the Debtor's contentions, the *Chestnut Ridge* court seems to have accepted and embraced the *Lee Roads* interpretation of the phrase "possession of the leasehold." *See id.* at 481–82.

*Carlton Restaurant* is not directly on point. In that decision, the court simply did not have occasion to interpret what constitutes "possession of the leasehold" under

§ 365(h). Instead, *Carlton Restaurant* involved a tenant-debtor's ability to assign its rights to a third party *after* its lease had already been rejected.[2] For this reason, and those mentioned by Chief Judge Duberstein, *see In re Lee Road Partners, Ltd.,* 155 B.R. at 63 n. 18, the *Carlton Restaurant* decision is readily distinguishable.

As Chief Judge Duberstein noted, even the *Harborview* decision can be distinguished on equitable and factual grounds. *In re Lee Road Partners, Ltd.,* 155 B.R. at 63.[3] For instance, the *Harborview* court appeared to credit allegations of insider dealing—if not downright fraud.[4] Since the bankruptcy court is at heart a court of equity, the end result in *Harborview* seems unimpeachable. *See In re PCH Assocs.,* 949 F.2d 585 (2d Cir.1991) ("It is well established that a bankruptcy court, as a court of equity, may look through form to substance when determining the true nature of a transaction as it relates to the rights of parties against a bankrupt's estate.") (citing *Pepper v. Litton,* 308 U.S. 295, 304, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939)). In *Harborview,* the entity seeking § 365(h) protection was an insider of the debtor whose actions were therefore subject to "rigorous scrutiny." *In re Harborview Dev. 1986 Ltd. Partnership,* 152 B.R. at 900 (quoting *Pepper v. Litton,* 308 U.S. at 307, 60 S.Ct. at 245 (1939)). By contrast, Woolworth

---

**2.** The facts presented in *Carlton Restaurant* are as follows. Two separate proceedings were involved. In the first one, the owner of the Carlton House, a large multi-use building in Philadelphia, filed a Chapter 11 petition and sought to reject the lease of the Corned Beef Academy, a delicatessen located on the first floor of the premises. Bankruptcy Judge Scholl allowed the owner of the Carlton House to reject the Corned Beef Academy's lease but allowed the restaurant to remain in possession with options to renew. *See In re TM Carlton House Partners,* 97 B.R. 819 (Bankr.E.D.Pa.1989). Subsequently, the owner of the Corned Beef Academy experienced financial difficulties of its own, forcing it to close down the restaurant and seek the protection of Chapter 11. At this point, Bankruptcy Judge Scholl refused to allow the owner of the Corned Beef Academy to assign its lease to a third party for the sum of $150,000, reasoning that the owner of the premises need not be saddled with a bad deal once the tenant no longer plans to use the lease for itself. *See In re Carlton Restaurant, Inc.,* 151 B.R. at 353.

**3.** Chief Judge Duberstein also distinguished the case on the grounds that South Carolina property law differs from Florida law. *Id.*

**4.** The facts presented in *Harborview* are as follows. The Debtor, Harborview, had entered into a lease with an affiliate, CFI, an entity that was 100% owned by a 99% general partner of Harborview. CFI in turn subleased the premises to a third party for almost twice the rental amount it was paying to Harborview. Harborview subsequently entered into bankruptcy. The Debtor's appointed trustee then moved to reject the insider lease with CFI. CFI then sought the protections of § 365(h). The bankruptcy court and the district court refused CFI's entreaties, citing the equities of the situation, CFI's insider status, and the fact that CFI was not in "legal possession" of the premises under South Carolina law. *In re Harborview Dev. 1986 Ltd. Partnership,* 152 B.R. at 899. It is this latter part of the holding to which the Debtor in this action understandably attempts to cling.

negotiated its leases at arm's length and is simply attempting to retain the benefit of its bargain. Nevertheless, to the extent that *Harborview* holds that actual possession as opposed to constructive possession is required in order to invoke the protections of § 365(h)(1), *see In re Harborview Dev. 1986 Ltd. Partnership,* 152 B.R. at 900–01, that analysis is rejected. As noted above, a more acceptable reading of the *Harborview* decision suggests that it was driven by the facts of the case and CFI's unscrupulous attempts to manipulate § 365(h) for its own benefit. In this Court's view, any interpretation of § 365(h)(1)—whether in *Harborview* or elsewhere—that requires actual possession or occupation of the leasehold flies in the face of the statutory language and long established notions of legal possession.

*Rejection of the Lease*

There can be little doubt that the Debtor has moved to reject its Overlease with Woolworth in an attempt to gain for itself the higher rents Woolworth charges to Ross Stores and its other sublessees. But the Court has held that Woolworth will be permitted to remain in possession of the leasehold (and continue to lease the property) even if the Debtor were allowed to reject the Overlease. Therefore, the bankruptcy court's conclusion that there would be no benefit to the estate if the Debtor were allowed to reject the Overlease is not clearly erroneous. Indeed, in its appellate papers and at oral argument, the Debtor virtually conceded that if Woolworth is protected by § 365(h)(1), its motion to reject the lease should be denied.

## Conclusion

For the reasons stated herein, the Court holds that Woolworth is in possession of the leasehold as contemplated by 11 U.S.C. § 365(h)(1). Accordingly, the decision of the bankruptcy court denying the Debtor's motion to reject the Overlease is hereby affirmed.

SO ORDERED.