## In re STANLEY STATION ASSOCIATES, L.P., Debtor.

### STANLEY STATION ASSOCIATES, L.P., Plaintiff,

### v.

### FLEMING COMPANIES, INC., Mark A. Dobbels and Albert J. Dobbels, Defendants.

Bankruptcy No. 90–40324–11.

Adv. No. 90–7227.

United States Bankruptcy Court, D. Kansas.

March 29, 1995.

Cynthia F. Grimes and Scott Wasserman of Lewis, Rice & Fingersh, Kansas City, MO, for debtor/plaintiff.

Michael R. Roser of Lathrop & Norquist, Kansas City, MO, for defendants.

*ORDER GRANTING MOTION FOR SUMMARY JUDGMENT OF DEFENDANT FLEMING COMPANIES, INC.*[1]

JOHN T. FLANNAGAN, Bankruptcy Judge.

If a trustee[2] rejects an unexpired lease, the lessee "may remain in possession of the leasehold" for the balance of the lease term, or longer depending on nonbankruptcy law, according to § 365(h)(1) of the Bankruptcy Code.[3] The question here is whether a lessee that subleased the property before the

---

1. Debtor Stanley Station Associates, L.P. ("Stanley Station"), appears by its attorneys, Cynthia F. Grimes and Scott Wasserman of the firm of Lewis, Rice & Fingersh, Kansas City, Missouri. Defendants Fleming Companies, Inc. ("Fleming"), and Mark A. Dobbels and Albert J. Dobbels ("Dobbels") appear by their attorney, Michael R. Roser of the firm of Lathrop & Norquist, Kansas City, Missouri.

2. The debtor-in-possession, Stanley Station Associates, L.P., will be referred to as "trustee," "debtor," "lessor," or lessor-debtor."

3. Effective October 22, 1994, The Bankruptcy Reform Act of 1994 amended 11 U.S.C. § 365(h)(1). The amendment is not applicable

debtor-lessor filed bankruptcy can remain in possession after the trustee rejects the lease. The Court answers in the affirmative.

The debtor, a limited partnership, owns a strip shopping center called Stanley Station located in the city of Stanley, Johnson County, Kansas. On November 13, 1978, debtor, as lessor, entered into a 20–year "build and lease" agreement with the lessee, Fleming Companies, Inc. ("Fleming"), covering premises within Stanley Station. Just prior to the filing of the bankruptcy petition on February 16, 1990, Fleming sublet the premises to Mark A. Dobbels and Albert J. Dobbels (collectively, "the Dobbels").

After the Chapter 11 order for relief, debtor filed an adversary complaint to reject the lease and regain possession of the leasehold property, joining Fleming and the Dobbels as defendants.[4] Fleming and the Dobbels answered that the lease should not be rejected, but if it was, as lessee and sublessee, respectively, they were entitled to remain in possession of the leased property under 11 U.S.C. § 365(h)(1). Debtor filed a motion for partial summary judgment to which Fleming responded with its own summary judgment motion. Following oral arguments on the motions, the Court took the matter under advisement.[5]

Federal Rule of Civil Procedure 56, governing summary judgment, is made applicable to bankruptcy proceedings through Fed. R.Bankr.P. 7056. The Court must grant summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Fed.R.Civ.P. 56(c). The Court must view the evidence and draw any inferences in a light most favorable to the party opposing summary judgment. *Eaton v. Jarvis Product Corp.*, 965 F.2d 922, 925 (10th Cir.1992). The moving party has the burden of showing that it is entitled to summary judgment as a matter of law. *Oklahoma Radio Associates v. F.D.I.C.*, 987 F.2d 685, 690 (10th Cir.1993).

The Court adopts the uncontroverted statements of fact set out in debtor's memorandum in support of its motion for partial summary judgment:[6]

1. On February 16, 1990, Stanley Station filed a voluntary petition commencing this case under Chapter 11 of the United States Code. (Complaint to Reject Lease and Determine Rights of Possession ("Complaint"), Par. 1; Conceded at Answer, Par. 1).

2. Plaintiff is the owner of real estate located in Johnson County, Kansas, more particularly described in the attached Exhibit A and commonly known as "Stanley Station." (Complaint, Par. 5; Conceded at Answer, Par. 1.)

3. Plaintiff, as Lessor, entered into a Lease dated November 13, 1978, with Defendant Fleming Companies, Inc. ("Fleming"), as Lessee. The Lease covered certain described premises in Stanley Station.... (Complaint, Par. 6; Conceded at Answer, Par. 3.)

4. Fleming denies having used the leased premises for a grocery store operation. (Answer, Par. 3.)

. . . .

6. After Stanley Station moved to reject Fleming's lease, Fleming subleased the premises to defendants Dobbels. Any

here because this case was not filed on or after October 22, 1994. Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 205, 702 (not applicable, with exceptions, to cases commenced before the October 22, 1994, date of enactment).

**4.** Debtor's brief states that the Court directed it to file an adversary proceeding to reject the lease. However, Fed.R.Bankr.P. 6006 permits motion practice for lease rejection, and the Court

has no recollection of requiring an adversary complaint.

**5.** This proceeding is core under 28 U.S.C. § 157. The Court has jurisdiction under 28 U.S.C. § 1334 and the general reference order of the District Court effective July 10, 1984 (D.Kan. Rule 705).

**6.** The exhibits referred to by plaintiff's memorandum are not attached to this opinion.

rights of defendant [sic] Dobbels in the space are subject to Stanley Station's rights and remedies under 11 U.S.C. § 365 to reject Fleming's Lease. (Complaint, Par. 8; Conceded at Answer, Par. 1.)

7. On the date that Stanley Station filed its voluntary petition commencing this case, neither Fleming nor Dobbels was operating a retail operation at the premises. (Affidavit, Par. 4) After the commencement of this case, Dobbels opened a hardware store in the space formerly possessed by Fleming (Aff., Par. 5).[7]

Further, the Court adopts the uncontroverted statements of fact contained in defendant Fleming's brief in support of its motion for summary judgment:[8]

1. Stanley owns and operates a strip shopping center at the junction of Highway 169 and 151st Street in Stanley, Kansas. On November 13, 1978, Stanley, as lessor, and Fleming, as lessee, entered into a *Build and Lease Agreement* ("*Lease*"). Fleming thereby agreed to lease approximately 15,000 square feet at the shopping center for an initial term of twenty years. Fleming has options to extend the initial term for three additional terms of five years each. *Lease* (¶¶ 4 and 5).

2. The *Lease* (¶ 6) requires Fleming to pay rent in an amount equal to $4,500 per month or 1.25% of annual gross sales, whichever is greater; common area maintenance expenses; insurance; maintenance; and repairs. Fleming has paid all rent and performed all of its other obligations under the *Lease*. *Affidavit of Donald Boos* (¶ 8).

3. The *Lease* (¶ 18) gives Fleming an absolute right to assign and sublease without Stanley's consent.

4. The *Lease* (¶ 26) specifically acknowledges that Fleming "... is presently involved in numerous other activities at other locations." The *Lease* does not limit or restrict Fleming's right to engage in these activities at any location.

5. The *Lease* (¶ 24) gives Stanley the right to terminate Fleming's possessory rights, with or without a termination of the *Lease*, only upon Fleming's failure to pay rent or Fleming's failure to perform its other obligations under the *Lease*.

   . . . .

## Jegen's United Super, Inc.

7. Fleming sublet the premises to Jegen's United Super, Inc. ("Jegen's"). Jegen's operated a grocery store on the premises from January 1980 to 1988. Fleming and Jegen's terminated the sublease on January 25, 1990. *Affidavit of Donald Boos* (¶ 3).

8. The premises were idle from 1988 to January 25, 1990.[9] With no income of any kind from the premises, Fleming paid rent (approximately $100,000) to Stanley and performed all of its other obligations under the *Lease*. Stanley accepted Fleming's rent payments and performance of Fleming's other obligations. *Affidavit of Donald Boos* (¶¶ 8 and 9).

9. In the meantime, Fleming and Jegen's controlled access to the premises, and made them available for inspection by the Dobbels and other prospective sublessees. Stanley's only right of access to the premises was the right, granted by the *Lease* (¶ 11), to enter for the purpose of making inspections. Stanley did not attempt to exercise greater control over the premises. Nor did Stanley attempt to restrict Fleming's or Jegen's access to the premises. *Affidavit of Donald Boos* (¶ 7).

   . . . .

## The Dobbels

11. Fleming sublet the premises to the Dobbels on January 25, 1990. . . . *Affidavit of Donald Boos* (¶¶ 4 and 6).

---

7. Debtor's Motion and Memorandum in Support of Motion For Partial Summary Judgment filed October 28, 1991, at 2–3.

8. The exhibits to Fleming's brief are not attached to this opinion.

9. Debtor contends that the premises remained idle until May 12, 1990. The Court finds that the dispute as to the time the premises remained idle is not material to the resolution of this matter.

*Mutual Benefit Life Insurance Company*

12. On December 13, 1985, Stanley mortgaged the premises and the remainder of the shopping center, and assigned the *Lease* and all other leases to Mutual Benefit Life Insurance Company ("Mutual Benefit"). Recorded copies of the *Mortgage and Security Agreement ("Mortgage")* and the *Assignment of Rents and Leases ("Assignment")* are identified as Exhibits B and C of this Brief....

13. On February 1, 1990, Mutual Benefit commenced a foreclosure proceeding (No. 90–C1356) in the District Court of Johnson County, Kansas. On the same date, the District Court of Johnson County, Kansas entered an *Order* that directed Fleming and Stanley's other lessees to pay rent to Mutual Benefit....[10]

These uncontroverted statements of fact from the parties' pleadings are consistent and provide the Court with a foundation for finding that there are no genuine issues of material fact and that the matter is ripe for summary judgment.

Section 365(h)(1) addresses a lessee's right to possession upon debtor's rejection of an unexpired lease of real property.[11]

(h)(1) If the trustee rejects an unexpired lease of real property of the debtor under which the debtor is the lessor, ... the lessee ... under such lease ... may treat such lease ... as terminated by such rejection, where the disaffirmance by the trustee amounts to such a breach as would entitle the lessee ... to treat such lease ... as terminated by virtue of its own terms, applicable nonbankruptcy law, or other agreements the lessee ... has made with other parties; or, in the alternative, the lessee ... *may remain in possession of the leasehold* ... under any lease ... the term of which has commenced for the balance of such term and for any renewal or extension of such term that is enforceable by such lessee ... under applicable nonbankruptcy law.[12]

In *Lee Road Partners, Ltd. v. Woolworth (In re Lee Road Partners, Ltd.)*, 169 B.R. 507 (E.D.N.Y.1994),[13] the court construed this statute to mean that the lessee needs only constructive possession of the leasehold—not actual possession—in order to remain in possession of the premises after rejection of the lease. In arriving at this conclusion, the court stated:

When nontechnical words and phrases are not specifically defined in a statute, they should be interpreted according to their ordinary, natural meaning. *See Smith v. United States*, —— U.S. ——, ——, ——, 113 S.Ct. 2050, 2054, 2061, 124 L.Ed.2d 138 (1993) (citations omitted). In ordinary parlance, the term possession connotes ownership and control. One can certainly possess property without actually inhabiting it. The conventional dictionaries cited by Chief Judge Duberstein confirm this familiar understanding of the word. *See In re Lee Road Partners, Ltd.*, 155 B.R. [55] at 58 [ (Bkrtcy.E.D.N.Y. 1993) ] (citing Webster's Seventh New Collegiate Dictionary and Black's Law Dictionary). *See also* Brief of Appellee Ross Stores at 7 (citing The Concise American Heritage Dictionary). As Black's Law Dictionary states, possession is "[t]he detention and control ... of anything which may be the subject of property, for one's use and enjoyment, either as owner or as the proprietor of a qualified right in it, and

---

10. Brief in Support of Motion By Defendant Fleming Companies, Inc. For Summary Judgment and in Opposition to Motion By Plaintiff Stanley Station Associates, L.P. For Partial Summary Judgment filed December 13, 1991, at 2–7. (Footnotes omitted.)

11. Effective October 22, 1994, The Bankruptcy Reform Act of 1994 amended 11 U.S.C. § 365(h)(1) to include within the term "lessee": "any successor, assign, or mortgagee permitted under the terms of such lease." However, the amendment is not applicable here because this case was not filed on or after October 22, 1994.

Bankruptcy Reform Act of 1994, Pub.L. No. 103–394, §§ 205, 702 (not applicable, with exceptions, to cases commenced before the October 22, 1994, date of enactment).

12. 11 U.S.C. § 365(h)(1) (emphasis added).

13. The decision distinguishes *In re Harborview Development 1986 Ltd. Partnership*, 152 B.R. 897 (D.S.C.1993), cited by the debtor (finding that the sublessor was not in possession under § 365(h) based on state law statutes).

either held personally or by another who exercise [sic] it in one's place and name." BLACK'S LAW DICTIONARY 1047 (5th ed. 1979). The law recognizes two types of possession, actual and constructive. "A person who, although not in actual possession, knowingly has both the power and the intention at a given time to exercise dominion or control over a thing, either directly or through another person or persons, is then in constructive possession of it." BLACK'S LAW DICTIONARY at 1047. Clearly, then, Woolworth's relationship to the Premises falls squarely within both the ordinary understanding and conventional dictionary definitions of possession.

Moreover, words must be interpreted and understood in context. "The meaning of a word that appears ambiguous if viewed in isolation may become clear when the word is analyzed in light of the terms that surround it." *Smith*, —— U.S. at ——, 113 S.Ct. at 2054. Thus, even if the term "possession" were innately ambiguous, the Debtor has to contend with the prepositional phrase immediately thereafter: "of the leasehold." As one commentator puts it, "the plain language unequivocally provides that the tenant will remain in possession *of the leasehold* under the *lease.*. Physical possession is not required." Robert M. Zinman, *Landlord's Lease Rejection and the 1984 Amendments to § 365(h)*, 13 AM.BANKR. INST.J. 16, 16 (1994) (emphasis in original). In addition, the phrase at issue in this case—which grants the lessee the right to remain in possession of a leasehold under a lease—is juxtaposed with language granting a timeshare interest purchaser the right to remain in possession of a timeshare interest under a timeshare plan. Timeshare interest holders are only in literal, physical "possession" of a premises during a few allotted weeks (or days) of a year. *See In re Lee Road Partners, Ltd.*, 155 B.R. at 59; Zinman, 13 AM.BANKR. INST.J. at 16 n. 2. Understood in context, therefore, it becomes even clearer that Congress did not intend to limit the term

possession in § 365(h)(1) to those who at any given time are in physical possession of the subject property. Thus, Woolworth, who still has a valid Overlease with the Debtor, remains in possession of the leasehold, notwithstanding the fact that it has sublet the Premises to a number of subtenants, including one who later assigned its interest in its sublease to the Debtor.[14]

Under this analysis, Fleming would be entitled to remain in possession of the leasehold.

Furthermore, the provisions of the statute do not indicate that Congress intended to prevent subleasing. Yet, the essence of debtor's argument is that under § 365(h)(1), Fleming's exercise of its power to sublease should be viewed as a change in possession preventing it from claiming the benefits of § 365(h)(1). If Fleming had not sublet before the filing and the rejection, it could have done so afterwards. Since by the terms of the statute, neither the filing nor the rejection cut off the power of the lessee to sublease, the language "the lessee ... may remain in possession of the leasehold" simply identifies any party under the lease who would be harmed by rejection if not allowed to remain in possession.

The Court grants debtor's request to reject the lease since rejection may relieve the debtor of some lease obligations. However, the debtor's motion for summary judgment is otherwise denied.

Based on the analysis in *Lee Road Partners* and the reasoning in this opinion, the Court rules that actual possession by Fleming is not necessary under 11 U.S.C. § 365(h)(1) to preserve its leasehold rights after rejection. Fleming's constructive possession of the leasehold entitles it to remain in possession. To this extent, Fleming's motion for summary judgment is granted.

This Order shall constitute findings of fact and conclusions of law under Fed.R.Bankr.P. 7052 and Fed.R.Civ.P. 52(a).

IT IS SO ORDERED.

---

14. *Id.* at 509–10.